## E. A. WHITE *v.* MOSES *et al.*    (No. 1.)

An Alcalde of San Francisco had, in 1849, authority as such to make grants of the lands of that pueblo, and the same presumptions in regard to the regularity and effect of his proceedings attach to him as to other officers.

Where the grant of an Alcalde recited that he made it by virtue of the authority in him vested, *and* in pursuance of the order of the Town Council: *Held*, that his general authority to make the grant as Alcalde was not limited by the recital, and that the grant was admissible in support of the title of the grantee without proof of any order of the Town Council.

A grant by an Alcalde in 1849 of pueblo lands in San Francisco, was not invalidated by the fact that it was made in pursuance of a sale at public auction by order of the Town Council.

Where, in an action of ejectment, the proof shows that the entry of the defendants was upon a lot within the limits of an incorporated city, no presumption arises therefrom that they entered *bona fide* under any supposed rights amounting to color of title adverse to the owner, and under such proof they are not entitled to have the value of improvements made by them upon the premises deducted from the damages sustained by the plaintiff.

Appeal from the Twelfth Judicial District.

Ejectment by E. A. White, plaintiff, to recover from W. Moses, B. Wheaton, D. Winter, and J. B. Banks, defendants, nine undivided sixteenths of a lot in San Francisco.

The complaint sets up title and seizin in the plaintiff on the first of January, 1854, and avers an ouster by the defendants at that time, with a subsequent retention of the possession by them, and claims damages for use and occupation in the sum of five hundred dollars.    The defendants answer jointly, denying generally the allegations of the complaints, and averring that they are lessees of one holding title from Limantour, to whom it is alleged that the Mexican Government originally granted the premises.

On the trial, the plaintiff introduced in evidence a deed from one Geary, formerly Alcalde of San Francisco, to J. T. White and J. de la Montagnie, and deduced title from these grantees to nine-sixteenths of the premises.    The following is a copy of the Alcalde's deed :

" To all persons to whom these presents shall come or concern.

White *v.* Moses.

The town of San Francisco, in the Territory of California, by John W. Geary, First Alcalde of San Francisco, greeting.

"Whereas, the Ayuntamiento, or Town Council, of San Francisco, by virtue of the authority in them vested by resolution passed on the first day of December, in the year of our Lord one thousand eight hundred and forty-nine, ordered and directed that certain town lots should be exposed to public sale and sold to the highest bidder; and whereas, after due public notice of said sale, the same were exposed to public sale at auction in said town, on the tenth day of December, in said year, and one of said lots, numbered on the map of said town ten hundred and twenty, was sold to Joseph T. White and John de la Montagnie, for the sum of five hundred and ten dollars, being the highest price then and there offered for the same.

"Therefore, by virtue of the authority in me vested, and in pursuance of the order of the Ayuntamiento, or Town Council, of the town of San Francisco, I, John W. Geary, First Alcalde as aforesaid, for and in consideration of five hundred and ten dollars to me in hand paid, in trust for said town, before the delivery of these presents, (and the receipt of which is hereby acknowledged) have granted, bargained, sold, assigned, conveyed, and confirmed, and by these presents do grant, bargain, sell, assign, convey, and confirm, unto the said J. T. White and J. de la Montagnie, their heirs and assigns forever, the said fifty vara lot, numbered ten hundred and twenty, situated in said town on the south-west corner of Taylor and Sutter streets, together with all and singular the advantages and profits whatsoever in and to the same, belonging or in any manner appertaining; and also the estate, right, title, interest, property, claims, and demand whatsoever of the said town of San Francisco, in and to any and every part thereof. To have and to hold all and singular the above described lot of ground as fully as the same was held and possessed by the said town of San Francisco, as aforesaid, unto the said White and Montagnie, their heirs and assigns, to the only proper use and behoof of the said White and Montagnie, their heirs and assigns forever.

"In testimony whereof, I, the said John W. Geary, First Alcalde as aforesaid, have hereunto set my hand and official seal, this tenth

White *v.* Moses.

day of December, in the year of our. Lord one thousand eight hundred and forty-nine.

[L.S.]                                      " JOHN W. GEARY,

" First Alcalde of San Francisco.

" Signed, sealed and delivered in the presence of

" J. HERON FOSTER,

.     " H. L. DODGE."

A certificate of proof by one of the subscribing witnesses of the execution of the instrument was attached thereto.

No preliminary proof having been offered by plaintiff, defendants objected to the introduction of this deed on the ground that there was no evidence of the legal existence of the town of San Francisco, or its Town Council therein mentioned, and also because the special authority of said Alcalde therein recited was not first proved. The objection was overruled, and defendants excepted.

In relation to the possession of defendant Banks, Thibault, a witness for plaintiff, testified—" I saw a sign on the lot; to let, or sell, inquire of a man on Kearny Street by the name of Banks. I called there, but do not recollect what was said. The substance of it was about his being in possession of the lot." On cross-examination he said: " The name of the man I called to see on Kearny Street might have been Munson, and not Banks. I did not know him. He kept a wood-yard on Kearny Street, nearly opposite St. Mark's Place."

Peter Secalovich, a witness for defendants, after saying that he had known the lot several years, testified: " I know James H. Munson; kept at 14 Kearny Street, nearly opposite St. Mark's Place, when this suit was commenced. The notice upon the lot was, 'To let, inquire of Munson, at 14 Kearny Street;' he kept a wood-yard and setting saws. Banks had nothing to do with it (the lot); if he had, I should have known it."

As to the possession of defendant D. Winter, Thibault testified : " I think there was a bill upon the lot, ' For lease or sale, by Winter.' * * I called upon Mr. Winter at his shop on Jackson Street (off the lot) ; I had a conversation with him ; I cannot state what it was, or anything that was said. The conversation was to the same effect as the other ; it was as to whether he claimed pos-

White *v.* Moses.

session of the lot.   He claimed that he owned the lot, and was in possession."   On cross-examination witness said: "I cannot remember what Winter said in the conversation with him on Jackson Street.   I cannot state anything that he said."

William Winter was sworn as a witness for the defendants, and testified: "I am the brother and partner in business of the defendant Daniel Winter; was in business with him at the time this action was commenced.   He was not then in possession of this lot or claiming it.   I have heard the testimony given by the witness Thibault on this trial to-day.   I recollect the conversation spoken of by him as with Mr. Winter; I am the Mr. Winter with whom he had the conversation on Jackson Street, not the defendant Winter, my brother."

No other testimony was given as to the possession of these defendants.   No proof was offered by defendants as to the Limantour title.

At the close of the trial, defendants asked the Court to instruct the jury, that if they should find for plaintiff, the value of the improvements placed upon the premises by defendants should be deducted from the amount of damages which plaintiff might have sustained by their occupation, which instruction the Court refused and defendants excepted.

The jury found for the plaintiff against all the defendants, and assessed the damages at one hundred and six dollars and fifty cents, and judgment was entered accordingly.   Defendants moved for a new trial, which was denied, and from this order and the judgment they appeal.

*J. P. Treadwell,* for Appellants.

I.   Assuming that the town owned the land in fee to its own use, affected by no trust, and that the Town Council had the power to sell it, or order it to be sold and conveyed at public auction to the highest bidder for cash, still the deed from the agent or officer, purporting to be made in execution of a power from the Town Council, is no proof that such special power had been conferred.   Such special power must be specially proved by the party asserting and relying upon the act done under it.   This is too clear for either

White *v.* Moses.

argument or authorities.   Nor can the argument prevail that Geary as Alcalde had the power to make this deed, independent of the special power under which it is recited to be made.

No Alcalde of San Francisco, Mexican or American, ever did at any time assume, by virtue of his office, to sell any land at public auction to the highest bidder for cash or otherwise.   Even the granting of lots by Alcaldes to settlers had been discontinued long before the date of this deed by Geary.

The ordinance passed two years before by the Town Council, that the Alcalde make no more grants of lots, except as directed by the Council, had been fully acquiesced in; and no Alcalde grant made subsequent, unsustained by the special authorization of the Town Council, has ever been sustained in this Court, or any Court in San Francisco.

Alcalde Geary never, in any case, assumed to make a grant of land by virtue of his office, or without a special power from the Council.   He did not assume to make the deed in this case by virtue of his office, but under the power recited in it.   This is sufficient for us, all else aside.   Geary assumed to act on private authority of the Town, not public law.

That the recital of a power of attorney in a deed by the attorney is evidence of his power, is preposterous.

II.   Neither the Town Council nor the Alcalde had the power to sell the public lands at public auction to the highest bidder for cash.   The town held the public lands in trust merely, and not to its own use.   The land could not be taken on execution against the town, nor could it be sold for the purpose of paying its debts.   No more, then, could it be sold at public auction to the highest bidder for the purpose of raising money.

This is the language and decision of this Court in *Hart* v. *Burnett* (15 Cal. 580, 583.)

That the present defendants can raise and take advantage of the objection, is within the direct decision of this Court in the same case.   (Id. 615.)

III.   The Court erred in instructing the jury, that if they found for the plaintiff the latter was entitled to recover as damages the value of the use and occupation, without any deduction or

White *v.* Moses.

allowance for the permanent improvements.   The Court should not have taken from the jury all discretion, to find as damages the value of the use and occupation diminished by the value of the improvements made in good faith.   In the absence of any statute the jury have the discretion, and the general provision of the Practice Act (sec. 257) is in affirmance of it.

IV.   There was no evidence that either the defendant Banks, or the defendant Daniel Winter, was ever in possession of this lot, yet damages for use and occupation are recovered against them.

*Wm. W. Crane, Jr.,* for Respondent.

I.   The grant is *prima facie* evidence, both of the power of the Alcalde to make the grant, and also that he performed all the prerequisite acts necessary to make the exercise of the power valid.

If I understand the decisions of this Court aright, commencing with *Cohas* v. *Raisin,* down to *Payne* v. *Treadwell,* they are conclusive upon the point that " the same presumption in regard to the regularity and effect of these proceedings attach to him (the Alcalde) as to other officers."   This point has been so often and thoroughly discussed by this Court that I need only refer to *Hart* v. *Burnett* (15 Cal. 616) ; *Payne* v. *Treadwell* (16 Cal. 227, 229, 239).

Again : the defendants having no relation to the premises except as intruders, the recitals of the grant are conclusive against them. (*Stark* v. *Barrett,* 15 Cal. 366 ; *Wallace* v. *Maxwell,* 1 J. J. Marsh, 447, 450 ; *Devall* v. *Choffin,* 15 La. 566 ; *Davis* v. *Police Jury,* 1 Annual R. 295 ; *Hickman* v. *Boffman,* Hardin, [Ky.] 362 ; *Phillips' Lessee* v. *Robertson,* 2 Tenn. 421.)

Assuming that the Alcalde acted under two powers, one his general granting power as the executive officer of the pueblo, the other specially given by the ordinance, yet there being no proof of the special power, the recitals of such power will be disregarded and the presumption indulged that he acted under the general power. (*Selby* v. *Bass,* 19 La. 499.)

II.   It is claimed by appellants that neither the Town Council or Alcalde could sell the land of the pueblo at public auction, and

especially could not sell it to pay the debts of the corporation, and *Hart* v. *Burnett* is relied upon in support of the two propositions. The answer is—1st, that *Hart* v. *Burnett* in nowise decides that the public lands of the pueblo could not be disposed of at public auction, but only that these lands were held in trust and not " subject to seizure and sale under execution ;" 2d, it nowhere appears in the record of this case that the premises in controversy were sold to pay the debts of the pueblo or city, or to raise revenue.

III.   Defendants did not show that they entered into possession under color of title and in good faith, and therefore were not entitled to offset the value of their improvements against the damages for use and occupation.

IV.   The evidence in regard to the possession of Winter and Banks was conflicting, and the verdict of the jury upon that point will not therefore be disturbed.

NORTON, J. delivered the opinion of the Court—COPE, J. concurring.

The first objection urged in this case is to the ruling of the Court below in allowing the Alcalde grant to be read in evidence, without proof of the order of the Town Council directing the sale which is recited in the grant.

The Alcalde states in the grant that he makes it by virtue of the authority in him vested, *and* in pursuance of the order of the Town Council.   If the Alcalde had authority to make grants of the pueblo lands, the former of these powers was sufficient to sustain this grant, although the latter may not have existed.   The law upon this point, whatever may be the opinions of individuals, or the determinations of tribunals not governed by our judgments, must be considered settled so far as it depends upon the decision of this Court.   In the case of *Cohas* v. *Raisin* (3 Cal. 443) the Court announced these among other propositions : " 2d. That the Alcaldes were the heads of the Ayuntamientos, or Town Councils, and rightfully exercised the power of granting lots." " 4th. That a grant of a lot by an Alcalde, whether a Mexican or any other nation, raises the presumption that the Alcalde was a properly qualified officer, that he had authority to make the grant, and that the land

White *v.* Moses.

was within the boundaries of the pueblo." These propositions have not since been overruled, but have more than once been affirmed. In the case of *Dewey* v. *Lambier*, (7 Cal. 347) which was an action to recover a lot granted by Leavenworth, Alcalde, the Court, speaking of the case of *Cohas* v. *Raisin*, say : " We take this occasion to approbate the same, and to announce our determination of adhering to it." In the case of *Welch* v. *Sullivan* (8 Cal. 197) the Court say : " It is a misnomer to call these titles American Alcalde grants. They were the grants of the pueblo of its own property, which it had the right to transfer by virtue of the municipal law which was continued in force by the new sovereign until 1850. As to all grants made by the Alcaldes, it must be presumed that they were municipal lands which these officers had a right to grant, until the contrary is shown." In the case of *Payne and Dewey* v. *Treadwell*, (16 Cal. 232, 239) which was an action to recover a lot held under a grant by an American Alcalde and decided as late as 1860, the Court say : " Now, that the Alcalde is the proper officer to make the grant is unquestionable. The same presumptions in regard to the regularity and effect of his proceedings attach to him as to other officers." " Our conclusion is, that upon two distinct and independent grounds, the validity of these Alcalde grants may be safely rested : 1st, upon the title of the pueblo and the presumed authority of the Alcaldes, as the proper granting officers to grant lots within the pueblo." In the case before us nothing appears in the record restricting the ordinary powers of the Alcalde as the proper granting officer to grant lots within the pueblo, and under the law as settled by the authorities above cited the Alcalde grant was properly admitted in evidence without proof of the order of the Town Council.

It is secondly objected that the plaintiffs are bound by the recitals in the grant under which they claim, and by which it appears that the grant was-made upon a sale at auction ; that it has been settled by the case of *Hart* v. *Burnett* (15 Cal. 530) that the pueblo lands cannot be sold on execution against the town to satisfy its debts, and that it follows as a necessary result of that decision, and that the language of the Court authorizes the conclusion, that the town

4

could not sell the lands at auction to procure funds for the use of the town, and that hence the grant in question is void.

The case of *Hart* v. *Burnett* decided that the pueblo held its land in trust for the use and benefit of the people thereof, and not in absolute ownership for its own use, like an individual or private corporation, and that such lands could not be sold on execution against the will of the town to satisfy its debts. And although the Court say that the town could not sell out its lands to an individual *in gross*, it nowhere says that the town could not voluntarily convey a lot to a citizen for a consideration, or voluntarily sell the lots to raise funds for the use of the town in any appropriate way not inconsistent with the growth and prosperity of the town. But in various parts of the opinion the Court speaks of these lands as being held in trust to be granted to settlers or others in limited quantities, or disposed of for the support of the municipality. (See pages 580, 582, 594.) The fact, therefore, that the lot in question was sold at auction by direction of the Town Council, does not render the grant of the Alcalde void.

The defendants were not entitled to have the value of the improvements put upon the premises by them deducted from the damages, because it does not appear that they held " under color of title adversely to the claims of the plaintiff in good faith." No such averment is made in the answer, or proof made at the trial. The answer, in addition to a general denial, sets up title under Limantour (of which no proof was given) and a five years' adverse holding. The proof shows that the entry of the defendants was upon a lot within the limits of an incorporated city, and no presumption can arise that they entered *bona fide* under any supposed right amounting to a color of title adverse to the owner.

It is fourthly objected that there was no evidence to warrant the jury in finding that the defendants Banks and Winter were in possession of the premises at the time this action was brought, and we think this objection well taken. The notice seen by the witness Thibault on the lot was by itself no evidence against any person not proved to have authorized it to be placed there, and the declarations made to Thibault by persons not at the time on or in the vicinity of the premises, and whom he supposed to be these defendants, but as

to one of whom he says he did not know him, and that his name might have been Munson instead of Banks; and as to the other, he does not say that he knew him, but simply speaks of him as Mr. Winter, do not amount to proof that either of these two defendants were in possession. If there had been no question at the trial as to the identity of these persons, the reference to one of them as Mr. Winter might have implied a knowledge by the witness that he was the defendant in this action, but when this identity was disputed, and another person of the same name was a witness in the case, and testified that he was the person with whom Thibault had his conversation, there should have been some more direct evidence by Thibault that he knew the person, to entitle that person's declaration to the weight of evidence against the defendant Winter.

The judgment against Banks and Winter must, therefore, be reversed; but the counsel on both sides in the briefs filed in this case having conceded that a judgment might in this case be entered for and against such of the parties as the facts appearing in the record should warrant, we shall order the judgment to be affirmed as to the defendants Moses and Wheaton, and reversed as to the defendants Banks and Winter, and that the Court below render judgment in favor of Banks and Winter for their costs in the Court below, and that they also have execution for their costs on this appeal.