WILLIAM REDDING, AND EDWARD P. REED v. JOHN WHITE, AMOS WHITE, LAURA WHITE, AND P. KAMMERER.

POWER TO GRANT OR LEASE PUEBLO LANDS.—Under the Mexican law the power to grant or lease pueblo lands was vested in the municipal authorities; but this power was limited to the granting of house lots for building purposes, and lots two hundred varas square, called *suertes*, for cultivating or planting as gardens, vineyards, orchards, etc.

LEASE OF PUEBLO LANDS.—A lease of four hundred acres of pueblo land for ninety-nine years, made by the municipal authorities of a pueblo in California in 1847, was void for want of power in the authorities to make the lease.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

On the 9th day of April, 1863, plaintiffs commenced this action to recover possession of a tract of land in San José,

designated as Lot Number Forty-nine of the lots commonly called the five hundred acre lots of the Pueblo of San José.

The complaint averred possession and ownership in plaintiffs as tenants in common on the 27th day of May, 1862, and ouster by defendants on the same day. The answer denied the allegations of possession and ownership, and averred that defendants, and those whose title they had acquired, had been in possession of the land sued for for fourteen years. Plaintiffs, to maintain their action, relied on a grant made by the Alcalde of the Pueblo de San José, in accordance with the decree of the Junta and people of the Pueblo. Plaintiffs recovered judgment in the Court below, and defendants appealed.

The other facts are stated in the opinion of the Court.

*C. T. Ryland,* for Appellants.

The Court erred in admitting said pretended loan in evidence, because the Alcalde was not authorized or empowered in any manner to make such an instrument, and because the same conveyed no title or right. The Alcalde does not pretend to make said loan by virtue of any general power in him vested as such officer, but he makes it by authority of certain decrees of the Junta and people.

We have been unable to find in the Spanish or Mexican law any tribunal or power authorized to make grants, known or called "Junta," nor do we find any power given to the people to assemble as a Junta, for the purpose of authorizing Alcaldes or other officers to make grants. "Junta" simply means a meeting or gathering, and there is no power conferred on such to authorize Alcaldes to disposes of pueblo lands.

In the regulations for the government of the Province of California, by Governor Felipe de Neve, dated at Monterey, 1st June, 1779, and approved by the King of Spain, October 24th, 1781, the extent of *suertes* is fixed at two hundred varas square, (a vara is about thirty-three inches English measure.) *Two suertes of irrigable land, and two of dry land,* were all that were given to one person ; the rest of the lands were held

to be granted in the name of his majesty, by the Governor. (Sec. 5, App. 2, Rockwell, 446, 447.)

In the same law it is declared "that the corresponding titles to house lots, lands, and waters, granted to the new pobladors, or *which may hereafter be granted to other residents, shall be made out by the Governor*, or Commissary whom he may appoint for this purpose, records of which, etc., must be kept, etc. (Sec. 17, App. 2, Rockwell, 450.)

From this law, made at Monterey in 1779, and approved by the King, 1781, it would seem that four *suertes* were all that could be granted to an individual; and it further appears that the Governor and his Commissary were alone authorized or empowered to make even such grants or dispositions of the pueblo lands.

T. *Bodley*, also for Appellants.

W. T. *Wallace*, for Respondents.

The instrument being shown to be a genuine original official act of the Alcalde, upon its being read in evidence certain presumptions arose; among which was the presumption *that the Alcalde had authority to make the grant*, and that the land granted was inside the boundaries of the Pueblo of San José. (*Cohas* v. *Raisin*, 3 Cal. 453; *Welch* v. *Sullivan*, 8 Cal. 188–202; *White* v. *Moses*, 21 Cal. 40.)

This doctrine of presumption is one that has been indulged in in support of instruments of this character *whenever the question of authority to make the grant was presented, unembarrassed by any question of fraud or forgery.*

In the case of *United States* v. *Clark*, 8 Peters' U. S. Rep. 448, a royal order of 1790 was recited in the grant, as being the authority upon which it was issued. Of this order, thus recited, the Supreme Court of the United States said: "It most certainly does not authorize that grant  \* \* \*  and it is not doubted that the quantity contained in the grant far exceeded the quantity authorized by that order." The grant

in that case was *sustained*, notwithstanding that the authority
recited in it was not sufficient to sustain it.


By the Court, SANDERSON, C. J.

The conclusion which we have reached upon the controlling
question involved in this case, renders a notice in detail of the
several points made by counsel unnecessary. The plaintiffs'
title is founded upon an Alcalde grant or lease of the land in
controversy for " a term of ninety-nine years, with the right
of nine renewals." The quantity of land is described in the
lease as five hundred acres, more or less; but, as appears from
the record, the actual quantity is a little less than four hun-
dred acres. The grant, upon its face, purports to have been
made on the 14th of November, 1847, in accordance with the
decree of the Junta and People of the Pueblo de San José
Gde., in Upper California, passed and entered of record on the
29th day of June, 1847, and in accordance with a confirma-
tory decree of the people of said pueblo, passed in Primary
Assembly, on the 30th day of the same month, and entered of
record in the office of the Alcalde.

Assuming that the decrees of the 29th and 30th of June
fully empowered the Alcalde to make the grant in question,
we think they were void for the want of power in the Junta
and people of the pueblo, and leaving those decrees out of the
case and assuming that the Alcalde made the grant by virtue
of the general powers vested in him as such Alcalde, we also
think the grant was void for the same reason.

It has been held that the power to grant or lease pueblo
lands was vested in the municipal authorities under the Mexi-
can system. (*Cohas* v. *Raisin*, 3 Cal. 443; *Hart* v. *Burnett*,
15 Cal. 530; *White* v. *Moses*, 21 Cal. 34.) But this power,
as appears from the same cases, was limited to the granting of
house lots for building purposes, called *solares*, and sowing
ground for cultivating or planting as gardens, vineyards,
orchards, etc., called *suertes*. Upon the question as to how
much land a *suerte* embraced, we are cited to no authority,

except the fifth section of Appendix No. 2, Rockwell's Spanish Law, 446, containing extracts from the regulations for the government of the Province of California, by Don Felipe De Neve, Governor of the same, dated in the Royal Presidio of San Carlos de Monterey, June 1, 1779, and approved by his majesty in a royal order of the 24th October, 1781. It is there provided that each *suerte* of land, whether capable of irrigation or dependent on the seasons (*de riego de temporale*) shall consist of two hundred varas in length, and two hundred in breadth, such being the area generally occupied in the sowing of one *fanega* of Indian corn; and it is further provided that not more than two *suertes* of irrigable land, and other two of dry land, shall be allotted to each of the *pobladores*. If from that time until the cession of California to the United States any change was made in the size of a *suerte*, counsel have failed to produce the evidence of such change, and our own researches have discovered none. But admitting that a *suerte* had no precise limits as to quantity, the word by definition signifies a small, or middling sized lot, suitable for a garden, vineyard, or orchard. In Seoane's Neuman and Baretti's Dictionary the word is defined in English by the word " lot," and the expression *suerte de caña* is defined as each patch or lot into which a large sugar cane field is divided.

Guided by such light as we have we are of the opinion that the municipal authorities under the Mexican law did not have the power which was attempted to be exercised in the present case. We know of no instances where such grants were made except in the Pueblo of San José, and even there not until after the occupation of the country by our own people. This is, of itself, strong if not conclusive evidence of the non-existence of the power. Such a power would have been in direct antagonism to the policy of the Mexican Government as indicated in its laws touching the establishment of towns and villages, and would have retarded and defeated that policy.

For the purpose of inducing colonization and encouraging the building up of towns and villages, a certain quantity of

land was allotted to each to be distributed in small quantities among the inhabitants for building lots and for cultivation upon a moderate scale. In view of the quantity of the land thus allotted and the purposes for which it was allotted, it is apparent to us that leases by the municipal authorities of five hundred acre tracts for nearly a thousand years at a rent of only three dollars per annum could not have been authorized consistently with the end in view.

Judgment reversed and cause remanded.