# CHARLESTON

## YOCK v. MANN.

Submitted January 12, 1905.    Decided February 14, 1905.

1. PURCHASER—*Warranty to Realty—Title Perfected.*

    If one conveys land with general warranty, his title to which is defective, and he afterwards acquires good title to the same, such acquisition inures to the benefit of his grantee. (p. 193.)

2. PERMANENT IMPROVEMENT—*Notice of Superior Title.*

    One making permanent improvements on land as if his own, if when making them, he has notice, actual or constructive, of the superior rights of another, cannot be allowed for such improvements. (pp. 194, 195.)

3. SUPERIOR TITLE—*Improvements—Notice.*

    "One having notice of facts rendering his title inferior to another's, who by mistake of law, regards his title good, cannot claim for permanent improvements." *Williams* v. *Jones*, 43, W. Va. 562. (p. 195.)

4. MARRIED WOMEN—*Separate Estate—Estoppel—Fraud.*

 A married woman cannot lose her land, separate or not separate estate, by estoppel by conduct, (*in pais*) without actual fraud, if even by it. *Waldron* v. *Harvey*, 54 W. Va. 608, (46 S. E. 603.) (p. 195.)

5. VESTED RIGHTS—*Oral Admissions.*

 "One cannot lose vested title to land by oral admission that it is the property of another." *Id.* (p, 195.)

Appeal from Circuit Court, Barbour County.

Bill by Florence Yock against John C. Mann and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

J. HOP WOODS and W. T. GEORGE, for appellant.

ICE & ICE and F. O. BLUE, for appellees.

MCWHORTER, JUDGE:

By deed dated the 16th day of December, 1893, James A. Williamson and wife and John C. Mann and wife, in consideration of $350.00, of which $125.00 was paid in cash and the residue, $225.00 to be paid in three equal annual payments of $75 each conveyed to Florence Yock a lot containing twenty-eight rods of land in the town of Belington, in Barbour county, with general warranty, reserving their vendor's lien to secure the payment of the deferred installments of purchase money. The same lot had been previously conveyed to said Mann and Williamson by W. P. Scott and Henry C. Jones in which a vendor's lien was likewise retained to secure the payment of unpaid purchase money; still prior to that the same lot was conveyed to Scott and Jones by James R. Payne and Julia C. Payne, his wife, who had also reserved a vendor's lien for a part of the purchase money. In January, 1898, H. A. Monahan brought his suit as assignee of some of the notes secured by the former vendor's liens, and on the 4th day of June, 1898, a decree was rendered to sell the said lot to satisfy said prior vendor's liens which was duly sold by a special commissioner and purchased by the defendant John C. Mann and the sale duly confirmed, and special commissioner W. T. George, appointed for that purpose, was directed to collect the deferred installments and disburse the purchase money and when all the purchase money should be

paid that he should execute a deed to the purchaser for said lot, and after the purchase money was collected, at the request of John C. Mann, who had made sale of the lot to F. P. Rease, special commissioner W. T. George, joined in a deed with John C. Mann and his wife dated the 9th day of May, 1899, and conveyed the same to Frank P. Rease in consideration of $350.00 paid by said Rease to Mann. At the April rules, 1902, Florence Yock filed her bill in the circuit court of Barbour county against John C. Mann, J. O. Williamson, administrator of James A. Williamson, deceased, F. P. Rease and W. T. George, special commissioner, defendants, alleging the payment of the sum of $84.30 as of the 30th day of April, 1894, and $69.00 paid about the 30th of June or July, 1894, on account of said deferred payments of purchase money due from her to Mann and Williamson and claimed that there was only then due from her on account of the purchase money not exceeding the sum of $114.-53 and alleging that she was entitled upon payment of the residue of the purchase money due from her to have the conveyance by the special commissioner and said Mann and wife to F. P. Rease set aside as in fraud of her rights and as a cloud upon her title and to be placed in possession of said lot as her own, and brings into court and tenders to said defendants, Mann and the administrator of J. A. Williamson said sum of $114.53 as all that was due upon the purchase money from her under her conveyance and prayed that said deed to Rease from Mann and wife and the special commissioner be set aside as a cloud upon her title and an order be made releasing the vendor's lien retained in the deed from Mann and wife and Williamson and wife to her and that she be given the possession of the said lot, and for general relief. Plaintiff exhibited with her bill copies of the deeds to herself from Mann and Williamson and from J. R. Payne and wife to Scott and Jones and from Scott and Jones to Mann, all of which deeds appear to have been duly recorded and plaintiff also exhibited a copy of Monahan's bill and decree of sale and decree confirming the sale of the lot in said cause to Mann. The defendants John C. Mann and F. P. Rease severally answered the bill, to which general replications were entered.

Defendant John C. Mann denied the subsequent payments

of $84 and $69 alleged by plaintiff on account of the purchase money, after the cash payment of $125.00; admitted the former vendor's liens and the proceeding by H. A. Monahan against him *et al.* to enforce the collection thereof and the purchase by himself of the lot under the decree of sale made in the Monahan case, and the confirmation of the sale to himself at the price of $215.43 and the sale of the same by himself and wife and deed to Rease joined in by the special com missioner George, who was appointed to make a deed to said Mann when he should pay the residue of the purchase money; denied that he had ever called upon plaintiff to have her pay the purchase money due him from her before the said prior liens on said lot were fully discharged; that he frequently urged plaintiff and requested her to take up the liens of the said Monahan and Crim and he would allow her full credit for the same upon the purchase money due to him, and thus perfect her title to said lot and remove all encumbrances thereon, which she expressly refused to do; denied that he had anything to do with the institution of the suit of Monahan against plaintiff and others, and that respondent repeatedly, at and after the sale, urged and requested plaintiff through her agent and attorney to take said lot and pay him and Williamson what was due to them after they had paid off the liens thereon and have the sale made by commissioner George confirmed to the plaintiff instead of respondent, and for several days the confirmation of said sale was held back for the express purpose of giving the plaintiff an opportunity to take the house and lot and she informed him by her agent and attorney that she could not do so; respondent denied that he in fraud of the rights of plaintiff joined in said conveyance with commissioner George, in the deed to defendant Rease; that while he did join in the conveyance he did not do so with any fraudulent intent or purpose, but because he had in good faith sold said lot to the defendant Rease, and that the sale was not made to Rease until long after the respondent had been informed by plaintiff's attorney that she could not and would not take the property and pay respondent and Williamson what she owed them upon it; alleging that the sale to Rease by respondent was made with the full knowledge of plaintiff and that no kind of opposition or protest was ever interposed by her to the execution of the deed to de-

fendant Rease or to the making of said sale to him, and that plaintiff prior to the sale or conveyance of said lot to Rease delivered possession thereof to respondent; that respondent was unable to say whether defendant Rease had notice of the rights now claimed by plaintiff in said property or not, but was certain that he never informed said defendant Rease of it, because he knew of no just right or claim that plaintiff had to or in said property, and denied that plaintiff was entitled to have the deed to Rease set aside or that she had any right of interest, whatever, in said property, and alleged that the conveyance from himself and commissioner George to Rease conferred complete legal and equitable title upon the defendant Rease, and that the same was not in fraud of the rights of plaintiff or otherwise invalid; and denied that the purchase of said lot by him from said commissioner George at the sale thereof inured to the benefit of the plaintiff.

The defendant, Rease, filed his demurrer and answer to the plaintiff's bill admitting that it was true that he purchased the property from defendant Mann for $350.00 which he paid to Mann and received a deed therefor from Mann and his wife, and commissioner George, dated the 19th day of May, 1899; denied that he had any knowledge of plaintiff's rights in the matter, but that he bought the same in good faith, that plaintiff was a party defendant to the chancery suit of Monahan against her and others; that she permitted the sale of the said lot to be made to Mann and by decree duly entered confirmed to him in which decree said special commissioner was authorized and directed to execute a deed conveying the lot to said Mann; that plaintiff had full knowledge of the purchase by Mann and that Mann was willing to have said sale reported and confirmed to plaintiff but she declined to have the same done and entered into an agreement with Mann; that the same was to be confirmed to him, and that he was to release her from any further payment by reason of her purchase from him and Williamson, and that under this agreement said Mann had said sale confirmed to him and released said plaintiff of payment of the unpaid purchase money to him and Williamson; that respondent after his purchase took possession of the lot, plaintiff giving him possession and making no claim thereto and thereupon respondent rebuilt the dwelling house

on said lot, fenced it, built new pavements around it and made other improvements at an expense to him of $362.00, all of which was known to plaintiff who stood by and permitted same to be done without making any claim to said lot whatsoever, and in his answer sets up her said acts as an estoppel against her making claim to said lot, and praying that if the court should hold that she was entitled to the same that respondent be allowed the value of his improvements, and that the amount paid by him to John C. Mann be refunded to him and denied every charge of fraud or intimation of fraud alleged against him in plaintiff's bill.

Depositions were taken and filed in the cause and the cause was heard on the 31st day of May, 1904, upon the bill and exhibits, the answers of Mann and Rease and general replications thereto, and upon exceptions to depositions, which exceptions were overruled and the court held that upon the pleadings and proofs the cause was for the defendants and decreed the dismissal of the bill and costs to the defendants Mann and Rease. From which decree the plaintiff appealed.

The decree in favor of appellee Mann in this case seems to be defended by counsel upon the theory that there existed between Mann and Williamson on the one side and plaintiff Yock on the other, an executory contract for the sale to Yock of the land, and that upon the failure of the purchaser Yock, to pay the purchase money they could rescind the contract; and cite many authorities to that effect, as in *Ketchem* v. *Evertson*, 13 John. (N. Y.) 359, (7 Am. Dec. 384): "Where a purchaser who advances money as part performance of a contract for the purchase of land refused to pay the remainder the vendor may rescind the contract and convey the land to another." And to the same effect is the case of *Chabot* v. *Winter Park Company*, 34 Fla. 258; (43 Am. St. 192); besides several Virginia cases and some West Virginia cases. They seem to forget that the legal title had passed from Mann and Williamson to the plaintiff Yock; that while she owed purchase money which she failed or refused to pay she still had the legal title and they could make no conveyance thereof to any other purchaser. In section 216, Maupin on Mark. Tit. to Real Estate, it is said: "A covenant of warranty will, in every case in which the grantor undertakes to convey an in-

defeasible estate and not merely such interest as he may have, estop him from afterwards holding an after acquired estate in the premises as against the grantee." And cases there cited. So in section 24. 1 Green'l. on Evidence: "A covenant of warranty also estops the grantor from setting up an after acquired-title against the grantee, for it is a. perpetually operating covenant." In *Raines* v. *Walker*, 77 Va. 92, it is held: "If one conveys land with general warranty, which at the time he does not own, but afterwards acquires . the same, such acquisition enures to the benefit of the grantee." *Clark* v. *Lambert*, 55 W. Va. 512, (47 S. E.. 312),. syl. pt. 2. "If one conveys land with general warranty, which at the time he does not own, or his title to which is defective, but he afterward acquires good title to the same, such acquisition inures to the benefit of his grantee." *Flanary* v. *Cain*, (Va.) 46 S. E. 681. Defendant Rease, in his answer states that plaintiff Yock gave him possession and thereupon he rebuilt the dwelling house on the lot and made the other improvements set up in his answer. To this answer there is a general replication by plaintiff, and plaintiff denies the fact in her testimony, and states that Mann got possession by getting one of her keys from her renter, Mr. Gainer, claiming he had bought it; that the possession of both Mann and Rease was without her consent or authority; Rease fails to prove even by his own testimony that the possession was. delivered to him by the plaintiff. There is nothing in his, testimony showing any act on the part of the plaintiff that. could in any way estop her in the assertion of her rights. He; claims in his testimony that he thought he had good title; that he did not know that he had examined the records, that. Mr. Ware was looking after that line of business for- him,. and he didn't remember that Ware reported to him as to the title of this property; he stated that he did not know that Mann owed the purchase money for it to commissioner George, and was asked: "Did you buy it of Mann without knowing anything about the title, and whether he had paid for it or not?" A. "I did. I considered him perfectly good for any purchase." That Mann did not tell him he owed the commissioner for the property, and stated that the first he learned that Mrs. Yock claimed any interest in the property was about the time she brought suit.

An attempt is made to prove by Melville Peck, who was attorney for Mrs. Yock, that she had failed in her efforts to raise the money to pay the purchase money, and that she had given up hope of saving it, and was therefore estopped from insisting that her claim should be enforced. Exceptions were taken to the deposition of Mr. Peck, for the reason that it detailed and disclosed communications of plaintiff to him when and while he was counsel for plaintiff in respect to the subject matter of this controversy, and was therefore privileged. The exception was overruled. The action of the court in overruling the exception is immaterial as the evidence of Peck failed to prove an estoppel. There is nothing to show he was authorized to make the statements he did, and admitting the fact they are not sufficient to estop her from asserting her claim. He simply stated that "She seemed to fail in her efforts to get the money; said that Mr. Surpell at last refused to furnish the money, and as I understood her she gave the matter up. I then told Mr. Mann that Mrs. Yock had failed to get the money to pay for the property, and I thought the matter was ended." The deed from special commissioner George and John C. Mann and Sallie Mann, his wife, of the 19th of May, 1899, recites the chancery cause of Monahan against Mann *et al.*, to which the plaintiff Florence Yock was a party, and wherein it appeared that said Mann and Williamson had conveyed the said property to the said Yock, and that she then had the legal title to said land. Of this fact the said Rease was bound to take notice as it was a recital in the deed then executed to him. In *Clark* v. *Lambert*, *supra*, (syl. pt. 3), it is held: "Where a subsequent purchaser had actual notice that the property in question was incumbered or affected, he is charged constructively with notice of all of the facts and instruments to the knowledge of which he would have been led by an inquiry into the incumbrance or other circumstances affecting the property, of which he had notice." Rease claims that in case the plaintiff is entitled to have his deed set aside that he would be entitled to be paid the amount he had expended on said lot in the way of improvements. *Williamson* v. *Jones*, 43 W. Va. 562, (syl. pt. 16): "One making permanent improvements on land as if his own, at a time when there was reason to believe his title good, is to be allowed their value,

so far as they enhance the value of the land; but if, when making them, he has notice, actual or constructive, of the superior right of another, he cannot be allowed them." And point 17: "One having notice of facts rendering his title inferior to another's, who, by mistake of law, regards his title good, can not claim for permanent improvements." This question is discussed at page 588, in said case. In *Waldron* v. *Harvey*, 54 W. Va. 608, (46 S. E. 603), syl. pt. 10: "A married woman cannot lose her land, separate or not separate estate, by estoppel by conduct (*in pais*) without actual fraud, if even by it." And point 11: "One cannot lose vested title to land by oral admission that it is the property of another." When the purchase was made by Mann under the decree in the Monahan case the purchase inured to the benefit of his grantee Florence Yock, and his sale of the property to Rease and the purchase by Rease of the same were in fraud of the rights of plaintiff Yock.

For the reasons herein stated there is error in the decree of the circuit court of Barbour county and the same is reversed, set aside and annulled and this Court proceeding to render such decree as the circuit court should have rendered, it is adjudged, ordered and decreed that the deed of May 19, 1899, from John C. Mann and Sallie Mann, his wife; and W. T. George special commissioner, to Rease be, and the same is set aside, annulled and held for naught, and the plaintiff is awarded a writ of possession for the lot in controversy, with costs to the plaintiff as well in the circuit court as her costs of this appeal. But this decree is without prejudice to the defendants Mann and Williamson to take such proceedings as they may be advised to enforce their vendor's lien against said property, if any, which may remain due and unpaid from the said Florence Yock.

*Reversed.*