CHARLIE C. GREEN

*v.*

ESTOL MULLINS

CHARLIE C. GREEN

*v.*

ESTOL MULLINS

and

ESTOL MULLINS

*v.*

CHARLIE C. GREEN, *et al.*

(No. 12120)

Submitted January 16, 1962. Decided February 27, 1962.

*D. Grove Moler, Ray Toler,* for appellants.

*Arthur Ritz Kingdon, Kingdon & Kingdon, Paul D. Blackshear,* for appellee.

CALHOUN, PRESIDENT:

This case involves an appeal from a final judgment of the Circuit Court of Wyoming County embodied in an order of that court entered on April 18, 1961, involving three actions consolidated and tried together. In one of these actions against certain heirs at law and devisees of John W. Green, deceased, Estol Mullins seeks to recover for the value of a store building placed on real estate owned by John W. Green during his lifetime. In the other two actions, Charlie C. Green, devisee under the will of John W. Green and, as a consequence of such devise, the owner of the land on which the building stands, seeks to recover from Estol Mullins for the rental value of the building since the death of the testator. Estol Mullins prevailed in the trial court, and the losing litigants prosecute this appeal.

The controversy herein involved has been before this Court in one form or another three times previously. In order to place in proper perspective the issues now presented, it is essential to state their factual background in some detail.

John W. Green, a widower, immediately prior to his death on August 26, 1952, was the sole owner in fee simple of a tract of 224.94 acres of mountain land in Wyoming County. He left a will which was dated February 20, 1951, which was probated on September 20, 1952, and which disposed of no property other than the real estate referred to above. He was survived by two sons, Charlie C. Green and Marton Green, and by four children of a deceased daughter, Catherine Green Mullins. One of these four children is Estol Mullins.

By his will John W. Green divided the 224.94-acre tract in two tracts of approximately 112 acres each, described each by metes and bounds, and devised one of such tracts to his son, Marton Green, and the other to his son, Charlie C. Green. Marton Green subsequently died intestate, survived by Minnie Green, his widow, and by Luther Green, Calvin Green, John W. Green II, Faye Green Bennett, Mason Green and Mattie Green Stewart, his children. Charlie C. Green and Marton Green were designated by the will as the executors of the estate and they qualified as such on September 20, 1952. Except for the tract of 224.94 acres, which by the will was divided and devised to the two sons as previously stated herein, the estate of John W. Green passed to his two sons and to the children of his deceased daughter under laws relating to intestacy. The record fails to disclose clearly the nature of the property which was not disposed of by the will and which thus passed to the heirs in accordance with laws of descent and distribution, but apparently it consisted solely of personal property. The estate was settled finally, and the heirs received their several distributive shares. Estol Mullins testified that his distributive one-twelfth share amounted to a sum in excess of three hundred dollars.

During the winter of 1946-47 Estol Mullins erected a two-story building on the tract of 224.94 acres of land belonging to his grandfather, John W. Green. The building is 26 feet in length and 20 feet in width.

It is located on the portion of the tract which was subsequently devised to Charlie C. Green, and since its completion in the spring of 1947, the first story has been used by Estol Mullins as a country store and the upstairs portion has been used by him and other members of his family as living quarters.

In 1953, Estol Mullins and the other children and heirs at law of Catherine Green Mullins instituted a suit in the Circuit Court of Wyoming County to set aside the will of their grandfather, John W. Green, on the ground of lack of mental capacity. In 1954, the circuit court entered a decree adjudging the will to be valid and this Court refused to grant an appeal from such judgment.

In 1956 Estol Mullins instituted in the same circuit court a suit for specific performance of an alleged parol agreement by John W. Green to devise by will to Estol Mullins a one-third undivided interest in the tract of 224.94 acres. This Court reversed a judgment rendered in favor of Estol Mullins in that suit on the ground that the alleged oral contract had ''not been proved by the full, clear and convincing evidence which is required in such a case.'' *Mullins v. Green,* 143 W. Va. 888, 895, 105 S. E. 2d 542, 547.

On remand of the case by this Court, the circuit court conducted a hearing on the same bill of complaint, and under its prayer for general relief and by a decree entered August 8, 1959, made an allowance to Estol Mullins for the value of the building. This Court reversed that judgment. In its opinion, the Court referred to its previous opinion as follows: ''Though denying specific performance, this Court definitely held and determined, on the first appeal, * * * that, because the evidence was not full, clear and convincing, such contract had not been proved and for that reason did not exist between the plaintiff and John W. Green. That holding of this Court is conclusive upon the plaintiff and the circuit court and is controlling upon that question.'' *Mullins v. Green,* 145 W. Va. 469, 115 S. E. 2d 320, 323.

Reference is made to the two previous opinions of the Court for detailed statements of pertinent facts. Those opinions settle the proposition that the testimony was insufficient to establish an express contract, and that if there was thereafter available to Estol Mullins any sort of remedy or relief in the premises, it must necessarily be on some basis other than on the basis of an express contract. We are, therefore, afforded that adjudication as a starting point in a consideration of the matters presented for decision by the present appeal.

Charlie C. Green instituted an action in assumpsit in 1956 against Estol Mullins for recovery of rent for the period of four years prior to May 1, 1956; and in 1960 Charlie C. Green instituted an additional action against Estol Mullins to recover rent from June 1, 1956, to October 1, 1960. During the latter part of 1960, Estol Mullins instituted a new action, the one presently involved, against Charlie C. Green, Minnie Green, widow of Marton Green, and Marton Green's surviving children: Luther Green, Calvin Green, John W. Green II, Faye Green Bennett, Mason Green and Mattie Green Stewart, seeking recovery in the sum of $10,000 for the value of improvements, consisting of the building erected by him on the real estate in question. It appears, therefore, that all the heirs at law of John W. Green were made parties defendant to this most recent action instituted by Estol Mullins, except the heirs at law of Catherine Green Mullins, deceased.

To the 1960 action by Estol Mullins for recovery of the value of improvements, being the first suit or action for that specific purpose, the defendants filed a joint and several answer by which Charlie C. Green asserted a claim for rent, amounting to $6300 against Estol Mullins from the date of the death of John W. Green to the date of the filing of the answer. The answer also asserted several defenses, including the following:

"(2)   If there was ever any obligation on the part of John W. Green to Estol Mullins based upon construction of said building by the latter on the former's land it could only be a promise to re-imburse him therefor implied from the knowledge of John W. Green that it was being constructed on his land and his failure to prevent such construction or to object thereto at the time, which implied contract, could only be asserted against said John W. Green in his lifetime, or his estate after death, in the form of a claim or of an action for legal damages, subject to the fact that Estol Mullins himself was a distributee of such estate, liable for a portion of his own claim, and to the defenses of laches or the Statute of Limitations. No such claim having been made against said estate, the estate having been settled, and Estol Mullins having accepted his distributive share without complaint, he, said Mullins, cannot now assert his claim herein against defendants as devisees of certain real estate formerly owned by John W. Green, there being no privity of contract whatsoever between plaintiff and any of the defendants.

"(3)   Plaintiff is barred by laches."

The two actions by Charlie C. Green for recovery of rent and the action by Estol C. Mullins for recovery of the value of improvements were consolidated and tried together. Upon the completion of testimony before the court and a jury on November 28 or 29, 1960, three interrogatories were submitted to the jury which, with the jury's answers thereto, were as follows:

"1.   Did the defendant, Estol Mullins, before he moved into possession of the 224.94 acre tract of land in controversy and erected his store-apartment building thereon in 1947, have good cause to believe that John W. Green promised that he, John W. Green, would, on his death, will and devise to the defendant, Estol Mullins, an interest in the land on which the store-apartment building was located?

"Answer:   Yes.

"2.   What is the present fair market value of the said store-apartment building exclusive of all improvements made thereon after 1951?

"Answer:   $7,250.00.

"3. What was the fair rental value of the store-apartment building for the period commencing September 1st, 1952 and ending August 31st, 1960?

"Answer: $50.00 per month."

No verdict was returned by the jury other than its answers to the three interrogatories. Charlie C. Green and the other defendants named in the action by Estol Mullins for recovery of the value of the improvements moved the court "to set aside the verdicts of the jury in answer to Interrogatories No. 1 and No. 2, and grant a new trial upon each of said interrogatories" for certain reasons assigned in writing. Apparently no objection has been urged by any party to the jury's answer to the third interrogatory which fixed the rental value of the building at $50 a month. By a final order entered some months later, April 18, 1961, the court "dismissed on the merits" the two actions by Charlie C. Green for recovery of rent; adjudged a recovery in favor of Estol C. Mullins in the sum of $7,250, the amount specified in the answer to the second interrogatory, less costs owing by Estol Mullins to Charlie C. Green in the sum of $978.59, leaving a net recovery of $6,271.41, representing "the present fair market value" of the building; directed that, unless Charlie C. Green and the widow and children of Marton Green "or any of them or some one of them do pay" to Estol Mullins the sum of $6,271.41 and his costs incurred in the three consolidated actions, within thirty days, the entire tract of 224.94 acres should be sold for cash by special commissioners; and directed that if such sum of $6,271.41, plus costs, was paid to Estol Mullins prior to the date of sale, he was required by the order forthwith to "quit his possession of the aforesaid tract of land in controvery, * * *."

The testimony before the court and jury was substantially the same as the testimony in the two previous cases decided by this Court. As a matter of fact, the testimony to a considerable extent consisted of the reading to the court and the jury of a transcript of the testimony of witnesses "on the former trial." Notwith-

standing the fact that the entire testimony was wholly insufficient to prove an express oral contract on the part of John W. Green to devise by will any portion of his land to Estol Mullins, and notwithstanding the two previous opinions of this Court, the complaint in the action instituted by Estol Mullins in September, 1960, alleges such oral contract specifically and in detail, and alleges that such express oral contract furnished the inducement and reason for the act of Estol Mullins in moving upon the land and in erecting the building thereon. No basis of liability is alleged other than that valuable improvements were made on the land in pursuance of an express oral contract and that "the said John W. Green, regardless of and in breach of his promises and agreement * * * did, on the 26th day of August, 1952, die without having performed * * * the promises and agreement by him made to the plaintiff on or about the 1st day of October, 1946, and, in particular, the said John W. Green died without having given and devised unto the said plaintiff Estol Mullins" the land in question, but that, on the contrary, John W. Green devised the land in question to his two sons, Charlie C. Green and Marton Green. The complaint so far as we are able to discern, alleges no other basis of liability. It does not allege an estoppel, an implied contract, unjust enrichment, or bad faith on the part of John W. Green. It does not allege that the defendants named in the complaint were privy to the alleged express contract or that they were guilty of any sort of fraud or inequitable conduct.

The trial court denied the claim of Charlie C. Green for rent by applying the provisions of Code, 1931, 55-5-3, which fixes a measure of accounting for rental value, waste and improvements, and which concludes as follows: "* * * but no charge shall be made against the tenant for the use of any improvements made upon the land by him, or for the use of any part of the land cleared by him." Section 1 of the same article of the Code restricts the application of the provisions of that article as follows: *"Any defendant against whom a*

*decree or judgment shall be rendered for land * * ** may, at any time before the execution of the decree or judgment, present a petition to the court rendering such decree or judgment, stating that he or those under whom he claims, *while holding the premises under a title believed by him or them to be good,* have made permanent improvements thereon, and praying that he may be allowed for the same the fair and reasonable value thereof; and thereupon the court, if satisfied of the probable truth of the allegation, shall suspend the execution of the judgment or decree, and impanel a jury to fix and assess the damages of the plaintiff (if any), and the value of the improvements (if any) so made by the defendant." (Italics supplied.)

The trial court improperly applied these statutory provisions in this case, because Estol Mullins was not a defendant against whom had been rendered a decree or judgment for land. He did not make the improvements "while holding the premises under a title believed by him * * * to be good." At most he then had no more than an expectancy or anticipation of a title, and that alone is insufficient. *Kelly v. Kelly,* 293 Ky. 42, 168 S. W. 2d 339. Even if he had then been holding the premises by virtue of a specifically enforceable parol contract to devise by will, as he alleges, he would have had at most only an equitable title. He had no basis whatsoever for a belief that he would obtain by the will of John W. Green the entire fee simple title to the portion of the land on which he erected the building. At most it would have been only a one-third undivided interest in the entire tract. He "must have had reasonable grounds to believe his title good at the time he made the improvements." *Dawson v. Grow,* 29 W. Va. 333, pt. 2 syl., 1 S. E. 564. "One having notice of facts rendering his title inferior to another's, who, by mistake of law, regards his title good, cannot claim for permanent improvements." *Williamson v. Jones,* 43 W. Va. 562, pt. 17 syl., 27 S. E. 411; *Yock v. Mann,* 57 W. Va. 187, pt. 3 syl., 49 S. E. 1019. See also *Bodkin v. Arnold,* 48 W. Va. 108, 35 S. E. 980; *Pittsburgh and W.*

*Va. Gas Co. v. Pentress Gas Co.,* 84 W. Va. 449, 100 S. E. 296; *Cain v. Cox,* 29 W. Va. 258, pt. 1 syl., 1 S. E. 298. ''It is not proper to allow permanent improvements to a claimant who has notice, actual or constructive, that his title is bad, although he act under the mistaken belief it is good.'' *Haymond v. Camden,* 48 W. Va. 463, pt. 2 syl., 37 S. E. 642. In the case of *Dawson v. Grow,* 29 W. Va. 333, 1 S. E. 564, the Court, in discussing a similar situation, stated: ''By reference to the statute before quoted it will appear, that the defendant must satisfy the jury, that she made the improvements 'at a time, *when there was reason* to believe the title good,' under which she was holding. So the question is not what the defendant believed, nor even what she had reason to believe, but what the jury or the court acting in lieu of a jury, ought to believe and find from the evidence. If they are satisfied, that she had reason to believe or had the ready means of discovering, that her title was not good, then she is not entitled to compensation. If this is not the true interpretation of the statute, then it can be rendered nugatory in every case, where the occupant purposely shuts his eyes to all means of informing himself, or refuses to believe all evidence impeaching his title to the premises.''

It is true that in the case of *Fishack v. Ball,* 34 W. Va. 644, 12 S. E. 856, the Court approved the action of the trial court in applying a similar statutory provision as a guide in adjusting the rights of the parties in a suit for specific performance of a parol contract. We believe, nevertheless, that these statutory provisions cannot be construed to add to or detract from rights of litigants except in the limited situation therein defined. It has been held in numerous cases that a similar statute in Virginia applies only to cases in which a judgment or decree has been rendered against a defendant for land. *Truslow v. Ball,* 166 Va. 608, 186 S. E. 71; *Branham v. Artrip,* 115 Va. 314, 79 S. E. 390.

In proper circumstances, equity will grant relief in the nature of specific performance of a parol contract to devise or bequeath property by will. *Gray v. Marino,*

138 W. Va. 585, 76 S. E. 2d 585; Harrison on Wills and Administration (2d Ed.), Volume 1, Chapter 5, pages 119-129; 58 W. Va. Law Rev. 398. Estol Mullins cannot be granted any sort of relief of this nature on the basis of an express parol contract, because the alleged parol contract has been eliminated by the prior decision of this Court.

In the answer filed by Charlie C. Green and other defendants to Estol Mullins' complaint, it is admitted that at the time the building was being constructed, John W. Green "knew of such construction and did not at the time object to Estol Mullins placing the same on his * * * property." In the brief filed in behalf of such defendants in this Court, it is stated that John W. Green "witnessed his construction of the building and apparently had no objection thereto, seemed to approve of it or consent thereto." From the entire record, it can scarcely be doubted that the building was placed on John W. Green's land with his knowledge, acquiescence and approval.

Under some circumstances, recovery may be had for the value of improvements made by one on the land of another in the absence of a specifically enforceable contract. For an exhaustive annotation dealing with the subject of the right to recover for improvements placed by one by mistake on the land of another, reference is made to 57 A.L.R. 2d 263. The following statement of a general principle appears as part of an annotation in 76 A.L.R. 304: "It is said to be a very familiar rule of the law of estoppel that if the owner of an estate stands by and sees another erect improvements on the estate in the belief that he has a right to do so, and does not interpose to prevent the work, he will not be permitted to claim such improvements after they are erected." To the same effect, see 27 Am. Jur., Improvements, Section 21, page 275; 9 M. J. Improvements, Section 7, page 599. The following statement appears in 42 C. J.S., Improvements, Section 6, page 429: "A right to compensation for improvements arises by estoppel when, and only when, the conduct of the owner of the

land in relation to the making of the improvements is such that it would be a fraud for him to take them without paying therefor." In the case of *Hall v. Hall,* 30 W. Va. 779, 784, 5 S. E. 260, 262, in reference to the right of one to assert a claim for improvements placed on the land of another, the Court stated: "In order to entitle him to such compensation it must be shown either that he was at the time he made the improvements a *bona fide* occupant and holder of the property, or that the improvements were made by him under such circumstances that it would be a fraud upon his rights to permit the owner to take them without compensation."

For reasons stated above, if Estol Mullins is or was entitled under the circumstances to recover for the value of the improvements in question, it must be on the basis of some conduct on the part of John W. Green amounting to a fraud practiced by him upon Estol Mullins or amounting to a basis of estoppel on his part. A claim of that nature would be *in personam* and pecuniary in nature, rather than *in rem.* See 42 C.J.S., Improvements, Section 8b, page 444. Charlie C. Green and the other defendants in the present action by Estol Mullins are not privy to any such conduct on the part of John W. Green, nor are they privy to any oral representations which may have been made by him. We are unable to perceive, therefore, any basis of personal liability of such defendants, and we are likewise unable to perceive any basis for a lien or charge on any portion of the real estate now owned by them as a consequence of John W. Green's will.

No claim of any sort was asserted by Estol Mullins against the estate of John W. Green, and no action was instituted by him against the executors of the estate. On the contrary, as has been stated earlier herein, Estol Mullins received and accepted his full distributive share on final settlement of the estate. Code, 44-2-27, provides that in some circumstances, after final distribution and settlement of an estate, a creditor may institute an action against distributees or legatees "with-

in two years after such distribution." No such action has been instituted. The next succeeding section (Code, 44-2-28) is, in part, as follows: "When the right to bring action or suit against distributees and legatees on any claim against the decedent shall become barred, the right to enforce such claim against real estate shall also become barred to the extent that such claim could have been collected out of the personal assets of the decedent."

The testimony indicates that John W. Green delivered to Estol Mullins on January 19, 1952, a writing designated "Notice by Landlord to Tenant to Terminate Tenancy." The writing is, in part, as follows: "You are hereby notified that I demand and require you to surrender, quit and deliver up to me, possession of the business and apartment building house with the appurtenances which you now hold or claim * * *." We do not find that Estol Mullins in his testimony denied receipt of such notice. This indicates that from the date of the receipt of that notice Estol Mullins was holding the premises without the consent and approval of his grandfather. He testified that Charlie C. Green has never given him permission to continue to occupy the premises, and that, promptly following the death of his grandfather, he knew that no part of the real estate, nor any interest therein, had been devised to him.

This Court is of the opinion that the trial court erred in allowing recovery in favor of Estol Mullins for the value of the improvements; and also in denying recovery for rent in favor of Charlie C. Green.

For the reasons stated herein, the judgment of the Circuit Court of Wyoming County is reversed, and this case is remanded to that court with directions to enter an order in these consolidated cases reinstating the two actions of Charlie C. Green against Estol Mullins; directing a recovery in favor of Charlie C. Green against Estol Mullins for rent from the date of the probate of the will of John W. Green until the date of the institution of the second action by Charlie C. Green against

Estol Mullins for recovery of rent at the rate of $50 per month, as fixed and determined by the jury in answer to the interrogatory propounded in such consolidated actions; and denying any recovery in favor of Estol Mullins against any of the defendants or their real estate for the value of the improvements.

*Reversed and remanded with directions.*