# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2015 Term

_____

No. 14-1110

_____

**FILED**
**November 4, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HEARTWOOD FORESTLAND FUND IV, LP,
a North Carolina Limited Partnership,
Plaintiff Below, Petitioner

v.

BILLY HOOSIER, JR.,
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Wyoming County
The Honorable Warren R. McGraw, Judge
Civil Action No. 10-C-34

_____

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: October 14, 2015
Filed: November 4, 2015

Kenneth E. Webb, Jr., Esq.               Timothy P. Lupardus, Esq.
James E. Scott, Esq.                     Lupardus Law Office
Bowles Rice LLP                          Pineville, West Virginia
Charleston, West Virginia                Counsel for the Respondent
Counsel for the Petitioner

JUSTICE KETCHUM delivered the Opinion of the Court.

## SYLLABUS BY THE COURT

"An improver of land owned by another, who through a reasonable mistake of fact and in good faith erects a building entirely upon the land of the owner, with reasonable belief that such land was owned by the improver, is entitled to recover the value of the improvements from the landowner and to a lien upon such property which may be sold to enforce the payment of such lien, or, in the alternative, to purchase the land so improved upon payment to the landowner of the value of the land less the improvements and such landowner, even though free from any inequitable conduct in connection with the construction of the building upon his land, who, however, retains but refuses to pay for the improvements, must, within a reasonable time, either pay the improver the amount by which the value of his land has been improved or convey such land to the improver upon the payment by the improver to the landowner of the value of the land without the improvements." Syl., *Somerville v. Jacobs*, 153 W.Va. 613, 170 S.E.2d 805 (1969).

**Justice Ketchum**:

The petitioner, Heartwood Forestland Fund IV, LP ("Heartwood"), appeals from the September 29, 2014, order of the Circuit Court of Wyoming County pursuant to which the respondent, Billy Hoosier, Jr. ("Hoosier"), was granted judgment as a matter of law. The action concerns a modular home mistakenly placed by Hoosier on a parcel of land owned by Heartwood. The order directs that Hoosier shall receive title to the portion of Heartwood's parcel mistakenly encroached upon and that Heartwood shall receive from Hoosier the fair market value thereof, less Hoosier's improvements.

Heartwood asserted before the circuit court that Hoosier, who owns an adjoining parcel, failed to determine the location of the common property line and, therefore, acted unreasonably in placing the modular home on Heartwood's parcel. Moreover, Heartwood, a partnership with forest reserves in Wyoming County, asserted that the modular home is harming its timber hauling business by obstructing Heartwood's sole access to the public road. Finally, Heartwood asserted that Hoosier's failure to file a counterclaim after being given leave to do so by the circuit court, and his failures concerning other procedural matters, should preclude him from any relief. Restating those assertions before this Court, Heartwood asks that we set aside the transfer of title and direct that Hoosier's modular home be relocated.

1

Upon review, this Court reverses the circuit court's September 29, 2014, order. We hold that Hoosier's modular home must be removed from Heartwood's property and relocated at Hoosier's expense. Accordingly, we remand this action with directions that the circuit court facilitate a reasonable process through which the removal and relocation of the modular home can be completed no later than six months from the entry of the mandate in this appeal.

## I. Factual Background

The operative facts are not in dispute. Heartwood, a North Carolina limited partnership, is the owner of land and forest reserves in Wyoming County. The parcel in question, consisting of approximately 5.6 acres, was purchased by Heartwood in March 2004. Adjacent to Heartwood's parcel is a 1.3 acre parcel purchased by Hoosier in January 2008. Deeds reflecting those purchases were duly recorded in the Office of the Clerk of the Wyoming County Commission.

Soon after purchasing the 1.3 acre parcel, Hoosier obtained financing to buy a modular home.[1] Without obtaining a survey to determine boundary lines, Hoosier personally

---

[1] There are no photographs of Hoosier's home in the appendix record. The home was referred to before the circuit court as a modular home, a mobile home, a trailer, a "double-wide" and a manufactured home. However, when specifically asked by the circuit court, Hoosier's counsel stated that the dwelling is a "modular home." Accordingly, we will refer to the dwelling as a modular home.

cleared and leveled a site to which the home was delivered by the modular home dealer. The home was transported on wheels and placed on blocks, and a foundation was subsequently constructed. However, the site prepared by Hoosier and the modular home placed thereon are entirely within the 5.6 acre parcel owned by Heartwood.

Stating that the modular home is obstructing its timber hauling operations, Heartwood sent letters to Hoosier in March, April and November 2009 demanding that the home be removed from its property. Heartwood offered to assist Hoosier in the relocation. Hoosier, however, declined to move the modular home.

## II. Procedural Background

On March 4, 2010, Heartwood filed a complaint in the Circuit Court of Wyoming County against Hoosier. Heartwood sought, *inter alia*, declaratory relief to confirm its ownership of the 5.6 acre tract and an ejectment order for the removal of Hoosier's modular home. Cited in the complaint is *W.Va. Code*, 55-4-1 [1923], *et seq.* (providing for ejectment from real estate).

Hoosier's deposition was taken in June 2011 during which he acknowledged that he never obtained a survey to determine the common property line between the parcels. He further acknowledged that the modular home is not on his property. In August 2011,

3

Heartwood filed a motion for summary judgment. Heartwood emphasized that Hoosier does not dispute that his home was erroneously placed on Heartwood's parcel. In addition, Heartwood submitted a survey report completed by Sefton R. Stewart, a licensed professional surveyor, which shows the location of the modular home within Heartwood's 5.6 acre tract.

On January 20, 2012, the circuit court entered an order denying Heartwood's motion for summary judgment. The circuit court noted in the order that Hoosier's home was placed on Heartwood's property. Nevertheless, in denying the motion, the circuit court relied on *Somerville v. Jacobs*, 153 W.Va. 613, 170 S.E.2d 805 (1969), the syllabus point of which holds:

> An improver of land owned by another, who through a reasonable mistake of fact and in good faith erects a building entirely upon the land of the owner, with reasonable belief that such land was owned by the improver, is entitled to recover the value of the improvements from the landowner and to a lien upon such property which may be sold to enforce the payment of such lien, or, in the alternative, to purchase the land so improved upon payment to the landowner of the value of the land less the improvements and such landowner, even though free from any inequitable conduct in connection with the construction of the building upon his land, who, however, retains but refuses to pay for the improvements, must, within a reasonable time, either pay the improver the amount by which the value of his land has been improved or convey such land to the improver upon the payment by the improver to the landowner of the value of the land without the improvements.

*See also* C. R. McCorkle, Annotation, *Compensation for Improvements Made or Placed on Premises of Another By Mistake*, 57 A.L.R.2d 263 (Supp. 2011) (citing

4

*Somerville*).

Heartwood filed a petition for a writ of prohibition in this Court challenging the denial of its motion for summary judgment.[2] Heartwood alleged that Hoosier acted unreasonably in placing the modular home on Heartwood's property and that the modular home conferred no value or benefit to Heartwood. This Court refused Heartwood's petition on May 23, 2012.

In May 2014, Hoosier filed a motion for judgment as a matter of law. Hoosier alleged that the placement of the modular home on the wrong parcel was due to error in the delivery of the home by the dealer. Therefore, the placement of the home was accidental and made in good faith. Hoosier further alleged that relocation would damage the home and depreciate its value. Hoosier asked the circuit court to direct Heartwood to convey the site to Hoosier at the property's pre-improvement market value. According to Hoosier, the conveyance should include the modular home, reasonable surrounding grounds and access to the public road.

In response, Heartwood asserted that, although Hoosier blamed the modular home

---

[2] The petition was styled *State ex rel. Heartwood Forestland Fund IV, LP v. The Honorable Warren R. McGraw, Judge of the Circuit Court of Wyoming County; and Billy Hoosier, Jr.*, no. 12-0445.

dealer for the placement of the home on Heartwood's parcel, Hoosier never filed a third-party complaint against the dealer. Rather, the modular home dealer delivered the home to the site Hoosier had personally cleared and leveled for just that purpose. Moreover, Heartwood noted that Hoosier never filed a counterclaim against Heartwood, and, therefore, any relief sought against Heartwood was unwarranted. Heartwood emphasized that Hoosier failed to file the third-party complaint and the counterclaim after having been given leave to do so by the circuit court.

Following a May 28, 2014, hearing, the circuit court entered the September 29, 2014, order granting Hoosier's motion for judgment as a matter of law.[3] Again relying on *Somerville*, the circuit court awarded Hoosier "ownership and title of the real estate upon which he mistakenly encroached." The order awarded Heartwood the fair market value of the property. The order stated: "Market value may be assessed by completion of an appraisal at [Hoosier's] expense, with said appraisal report delivered to the Court. Said appraisal is to consider the real estate only and not the improvements thereon." Heartwood's appeal to this Court followed.

---

[3] The order, less than two complete pages, did not set forth findings of fact and conclusions of law.

6

## III. Standard of Review

The order entered by the circuit court on September 29, 2014, resulted from Hoosier's motion for judgment as a matter of law. A motion, so described, is only made in the course of a jury trial. *See* Rule 50 of the *West Virginia Rules of Civil Procedure* (providing for judgment as a matter of law in jury trials). In this action, a jury trial was scheduled but never conducted. The September 29, 2014, order was, thus, a *de facto* grant of summary judgment in favor of Hoosier.

Pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure*, summary judgment is proper where the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." As a result of that straightforward language, this Court's standards of review concerning summary judgment are well settled. Syllabus point 3 of *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), holds: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Accord* syl. pt. 1, *Coleman Estate v. R.M. Logging, Inc.*, 222 W.Va. 357, 664 S.E.2d 698 (2008). Furthermore, in syllabus point 1 of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that a circuit court's entry of summary judgment "is reviewed *de novo*." *Accord Grant*

7

*Thornton, LLP v. Kutak Rock*, LLP, 228 W.Va. 226, 233, 719 S.E.2d 394, 401 (2011).[4]

## IV. Discussion

*W.Va. Code*, 55-4-1 [1923], *et seq.*, entitled "Ejectment," cited in Heartwood's complaint, provides a cause of action for the recovery of possession of real estate unlawfully withheld by another. In the usual case, the plaintiff, asserting a right to the property, alleges that the defendant has entered the premises and is unlawfully withholding possession, or claims ownership, title or interest therein to the plaintiff's detriment. If the plaintiff prevails, the defendant may assert a claim pursuant to *W.Va. Code*, 55-4-23 [1923], for the improvements he or she made to the property.

Claims for improvements to land are more specifically addressed in *W.Va. Code*, 55-5-1 [1923], *et seq.*, entitled "Allowance for Improvements" and also known as "The Betterment Statute." Under *W.Va. Code*, 55-5-1 [1923], thereof, a defendant, against whom a decree or judgment is rendered for land, may present a claim for the value of permanent

---

[4] This Court's standards of review of an order granting judgment as a matter of law are comparable to the standards concerning summary judgment. In both instances, review is *de novo* and, in both instances, this Court considers the evidence in the light most favorable to the nonmovant. *See* syl. pt. 5, *Smith v. First Community Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002) (addressing appellate standards of review with regard to the granting of a motion for judgment as a matter of law). *See also* Vol. 9 *Moore's Federal Practice* § 50.92 (Matthew Bender 3rd ed. 2015) (A ruling on a motion for judgment as a matter of law is reviewed *de novo*, while drawing all reasonable inferences in favor of the nonmovant.).

improvements, where the defendant held the property under a title the defendant believed to be good.

The Betterment Statute was cited by this Court in *Somerville v. Jacobs,* the case relied on by the circuit court.[5] Therein, the Somervilles mistakenly constructed a warehouse on lot 47 owned by the Jacobses. Lot 47 was subsequently leased to the Parkersburg Coca-Cola Bottling Company. The Jacobses, the true landowners, did not learn that the warehouse was on their property until after the building had been constructed and occupied by the lessee. The Somervilles filed an action against the Jacobses seeking compensation for the value of the improvements to lot 47 or, in the alternative, a conveyance of the lot to the Somervilles by the Jacobses.

In *Somerville*, the circuit court ordered that the Jacobses, the true landowners, would

---

[5] Though cited, The Betterment Statute was not directly applicable in *Somerville* because, in *Somerville*, a decree or judgment for land had not already been entered against a defendant who then sought recovery for permanent improvements. *See* syl. pt. 2, in part, *Green v. Mullins*, 146 W.Va. 958, 124 S.E.2d 244 (1962) (The Betterment Statute applies "only to a case in which a decree or judgment for land has been rendered against a defendant."). While the same may be said in the matter now before us, the Ejectment provisions, *W.Va. Code*, 55-4-1 [1923], *et seq.*, which address the recovery of possession of real estate, as well as claims for improvements, are relevant. As to improvements, *W.Va. Code*, 55-4-23 [1923], states: "If the defendant intends to claim allowance for improvements made upon the premises by himself or those under whom he claims, he *shall file wit*h his plea, or at a subsequent time before the trial (if for good cause allowed by the court), a statement of his claim therefor, *in case judgment be rendered for the plaintiff*." (Emphasis added)

9

have to elect between (1) retaining the warehouse and compensating the Somervilles $17,500.00 for the improvement or (2) conveying lot 47 to the Somervilles for $2,000.00. Those amounts were determined as follows: The fair market value of lot 47 prior to the construction of the warehouse was $2,000.00. The fair market value of lot 47 immediately after the construction of the warehouse was $19,500.00, the difference representing an improvement in the amount of $17,500.00.

This Court, in *Somerville*, affirmed the ruling of the circuit court. Analyzing a number of decisions from other jurisdictions, this Court, in *Somerville*, nevertheless, concluded that, in cases involving the right to recover for improvements mistakenly placed on land owned by another, the solution depends largely "upon the circumstances and the equities involved in each particular case." 153 W.Va. at 629, 170 S.E.2d at 813-14. In *Somerville*, among the factors considered was the absence of any inequitable conduct on the part of the Jacobses, the true landowners. Nevertheless, this Court observed that

> if the [Jacobses] retain the building and refuse to pay any sum as compensation to the [Somervilles] they will be unjustly enriched in the amount of $17,500.00, the agreed value of the building, which is more than eight and one-half times the agreed $2,000.00 value of the lot of the [Jacobses] on which it is located[.]

153 W.Va. at 628, 170 S.E.2d at 813.[6]

Justice Caplan filed a dissent in *Somerville* stating that he would give the Jacobses, who were without fault, the election "of purchasing the building, of selling the property, *or of requiring the [Somervilles] to remove the building from [the Jacobses'] property*." (Emphasis added)  153 W.Va. at 636, 170 S.E.2d at 817.  Justice Caplan stated:  "It is not unusual for a property owner to have long range plans for his property.  He should be permitted to feel secure in the ownership of such property by virtue of placing his deed therefor on record."  153 W.Va. at 635, 170 S.E.2d at 816.

As in *Somerville*, it is undisputed that the structure, in this case the modular home, was placed on the wrong property and was placed there in the absence of any inequitable conduct on the part of the true landowners.  Hoosier, without determining the boundary lines, personally cleared and leveled a site on the parcel owned by Heartwood on which the modular home was delivered by the dealer.  During his deposition, Hoosier acknowledged that the home is not on his property.  That fact is confirmed by the deeds and maps included in the appendix record before this Court.  Beyond those considerations, the circumstances

---

[6] *Somerville* was modified by *Realmark Developments, Inc. v. Ranson*, 214 W.Va. 161, 588 S.E.2d 150 (2003).  Syllabus point 2 of *Realmark* holds:  "The measure of damages in an unjust enrichment claim is the greater of the enhanced market value of the property or the cost of the improvements to the property.  To the extent that the Syllabus of *Somerville v. Jacobs*, 153 W.Va. 613, 170 S.E.2d 805 (1969), differs from this holding, it is hereby modified."

herein are in sharp contrast to those in *Somerville*.

The principles set forth in *Somerville*, reflected in its syllabus point, are evoked by the word "improvements" and the retention of the same by the true landowner.[7]  Here, no evidence shows Hoosier's modular home to be an improvement or benefit to Heartwood's 5.6 acres.  To the contrary, Heartwood has shown that the presence of the home is harming its timber hauling business by obstructing its sole access to the public road.  In that regard, the record includes the May 22, 2014, affidavit of Craig Kaderavek, Director of Forest Operations for the Appalachian Region of The Forestland Group, of which Heartwood is a subsidiary.  According to Kaderavek, Heartwood's property is the only viable connection to the public road, and, by preventing Heartwood from engaging in its business operations, Hoosier has diminished the value of the property.[8]  Kaderavek's affidavit further states that Heartwood has no need or use for the modular home and that, although Heartwood offered to assist Hoosier with a portion of his relocation costs, Hoosier declined the offer.  Thus, to paraphrase Justice Caplan's dissent, Heartwood's business activities comport with its right to be secure in the ownership of its property and its long range plans for the use of its

---

[7] This Court noted in *Somerville* that "it is clear from the testimony of the defendant William L. Jacobs in his deposition that the [Jacobses] intend to keep and retain the improvements and refuse to compensate the [Somervilles] for their value.  *  *  *  [The Jacobses] will not consent to the removal of the building even if that could be done."  153 W.Va. at 627, 170 S.E.2d at 812-13.

[8] Hoosier admits that the question of other access points to Heartwood's timber was not developed in the record.

property.[9]

In *Somerville*, the warehouse was constructed on the wrong lot as the result of an inaccurate survey provided to the Somervilles. Consequently, this Court concluded that the Somervilles had a reasonable belief, though mistaken, that the warehouse was on their own property. While we do not suggest that a survey should accompany all conveyances of real estate, in the present action Hoosier conducted no inquiry, survey, examination of the deeds on record, or otherwise, to determine the boundary between the respective parcels. Hoosier, thus, failed to take proper care by not using the information available to him in placing the modular home where he did. His actions were unreasonable and lacked the compelling quality which resulted in the granting of relief in *Somerville*.

Accordingly, Hoosier is entitled to neither a conveyance of title from Heartwood nor compensation for alleged improvements to Heartwood's property. As stated in *Restatement (Third) of Restitution and Unjust Enrichment* § 10, comment *a*. (2011):

> A judgment requiring the owner either to pay for an improvement or to sell the property at its unimproved value would probably be unacceptably

---

[9] *See Ark Land Co. v. Harper*, 215 W.Va. 331, 599 S.E.2d 754 (2004), a partition action in which this Court observed that "one who wants a particular estate for a specific use, if deprived of his rights, cannot be said to receive an exact equivalent or complete indemnity by the payment of a sum of money." (Internal quotation marks and case citations omitted) 215 W.Va. at 336, 599 S.E.2d at 759.

harsh in the case of property occupied by the owner, or property as to which the owner had formed definite expectations of future use.

*See Little v. Little*, 184 W.Va. 360, 363, 400 S.E.2d 604, 607 (1990) (The value of improvements are not recoverable in the absence of a reasonable mistake of fact or a reasonable belief that the land was owned by the improver.). Here, the record indicates that the modular home can be moved from Heartwood's parcel. We, therefore, hold that the modular home must be removed and relocated at Hoosier's expense.

The result herein is further supported from a procedural standpoint. On November 14, 2011, the circuit court entered an order which granted Hoosier's oral motion for leave to file an amended answer and a third-party complaint. The record indicates that the purpose of the amended answer was to assert a counterclaim for relief against Heartwood for title to the property or for compensation for the improvements to the property. The purpose of the third-party complaint was to assert a claim by Hoosier against the modular home dealer. The November 14, 2011, order was entered almost three years prior to the final order of September 29, 2014. However, no counterclaim or third-party claim were ever filed. Moreover, Hoosier conducted little or no discovery in the action. The relief set forth in Hoosier's motion for judgment as a matter of law, filed in May 2014, was limited to a

demand that the property be sold by Heartwood to Hoosier.[10]

## V. Conclusion

Upon review, this Court reverses the circuit court's September 29, 2014, order which awarded Hoosier title to Heartwood's property. Hoosier's modular home shall be removed from Heartwood's property and relocated at Hoosier's expense. Accordingly, we remand this action with directions that the circuit court facilitate a reasonable process through which the removal and relocation of the modular home can be completed no later than six months from the entry of the mandate in this appeal.[11]

---

[10] Other procedural issues include Hoosier's failure to move to dismiss the action on the ground that Hoosier's wife, who also lived in the modular home, was never joined as a party, even though more than four years lapsed between the filing of the complaint in March 2010 and the final order of September 29, 2014.

An additional procedural matter concerns *West Virginia Trial Court Rule* 24.01. which states that "all orders shall be submitted to the judicial officer promptly." At the May 28, 2014, hearing, the circuit court instructed the parties to submit their respective proposed orders by June 20, 2014. Heartwood timely submitted its proposed order, and no objection thereto was filed by Hoosier. Over two months later, on September 19, 2014, Hoosier submitted his own proposed order, which was not received by Heartwood until September 22, 2014. Heartwood filed objections thereto, but before the objections could be considered, the circuit court entered Hoosier's proposed order. Consequently, Heartwood was denied the opportunity to voice its objections prior to the entry of the circuit court's final order.

[11] This Court is of the opinion that the six month period for removal and relocation is fair under the circumstances of this action. In Heartwood's proposed order denying Hoosier's motion for judgment and awarding Heartwood summary judgment, Heartwood sought ejectment of the modular home at Hooosier's expense and that the removal of the home be completed no later than <u>six months</u> "from the entry of this Order." Moreover, Heartwood's subsequent petition for a writ of prohibition sought a remand with directions

**Reversed and Remanded with Directions**

that the circuit court facilitate a reasonable process through which Hoosier's modular home could be removed from Heartwood's property. Finally, during the May 28, 2014, hearing, Heartwood repeatedly expressed a willingness to assist Hoosier in moving the modular home from Heartwood's property and transferring it to Hoosier's property.

16