# CHARLESTON.

## DAWSON *v.* GROW.

Submitted January 17, 1887.—Decided February 25, 1887.

1. EJECTMENT—COMPENSATION FOR IMPROVEMENTS.

Under our statute, chap. 91, Amd. Code, a claimant, who has been evicted from land by the true owner, is not entitled to compensation for permanent improvements placed by him upon the land, when it is shown, that both the owner and such claimant derive title from the same grantor, and that at the time of the conveyance to the claimant the deed of the owner had been duly recorded in the proper county, although such claimant may not have had any *actual* notice of the better title, unless the owner had

been guilty of fraud or laches in not notifying such claimant to desist, when he knew the improvements were being made by the claimant under a mistaken belief, that his title was good. (p. 336.)

2. EJECTMENT—COMPENSATION FOR IMPROVEMENTS—*BONA FIDES* OF DEFENDANTS.

To entitle such evicted claimant to compensation for his improvements, he must be a *bona fide* holder or claimant of the land, and must have had reasonable grounds to believe his title good at the time he made the improvements. (p. 337.)

3. EJECTMENT—*MALA FIDES.*

A case in which it is held upon the facts disclosed, that the evicted claimant is not entitled to compensation for improvements.

*Watts & Camden* for plaintiff in error.

*W. A. Quarrier* for defendant in error.

SNYDER, JUDGE :

The Glen-Elk Company, being the owner in fee of lot No. 9, in block S., in the village of Glen-Elk, near the city of Charleston, conveyed the said lot to Millard F. Dawson by deed dated June, 1884, which was duly recorded at the time in Kanawha county. The said company by deed dated November 5, 1884, conveyed this same lot to Ella M. Grow. In February, 1885, said Dawson brought his action of unlawful detainer in the Circuit Court of Kanawha county against said Grow for the possession of the lot. This action was tried by a jury and a verdict was found for the plaintiff, on which the court on March 26, 1885, entered judgment, that the plaintiff recover of the defendant said lot.

During the same term, the defendant tendered her petition to the court stating, that, while she was in the possession of said lot and holding the same under a title believed by her to be good, she made permanent improvements thereon consisting of a dwelling-house and other buildings, which cost her $298.23. To the filing of this petition Dawson objected, but the court overruled the objection and allowed the petition to be filed. Dawson afterwards demurred to the petition and tendered his answer thereto; but the court overruled the demurrer, and upon objection to the answer

rejected the same. The matters arising upon the petition were by consent submitted to the court in lieu of a jury, and the court found, that the petitioner was entitled to recover on account of the improvements in the petition mentioned $304.88, and gave judgment therefor against the said Dawson. From this judgment Dawson obtained a writ of error and *supersedeas* to this Court.

Among the errors assigned by the plaintiff in error are the following :

" First—The court erred in allowing the defendant to file her petition for improvements in this action. It is claimed, that this was simply an action for the unlawful entry and detention of the *possession* of land, and that the judgment rendered therein was not a 'judgment for land,' such as is contemplated by the statute, under which the petition purports to have been filed.

" Second—The court erred in overruling the demurrer to the petition.

" Third—The court erred in giving judgment for the petitioner on the facts proved in the case."

The facts proved on the trial are all certified in the transcript before this Court; and I deem it unnecessary to consider any of the assignments of error except the third.

By the English law and the common-law of this country, the owner of land on recovering it, in an action at law was not bound to make compensation to the defendant for improvements made upon it by him, because the latter was presumed to have made them at his own risk. Improvements being considered as annexed to the freehold pass with the recovery. (2 Kent's Com. 334). The rule of the civil law was more liberal and permitted one, who had made permanent improvements on land in his possession under the *bona fide* belief that he was the owner of it, to exact full compensation for the value of such improvements, less the value of the use of the land, before he could be compelled to surrender it. (*Putnam* v. *Ritchie*, 6 Paige 404). Courts of equity first adopted this rule of the civil law and applied it in all cases, where the owner of land resorted to equity for the recovery of rents and profits and insisted upon his doing equity by paying for the *bona fide* possessor's

ameliorations before granting such relief. The rule thus adopted was subsequently imported into the common-law courts in the equitable action of trespass on the case for *mesne* profits so far as to limit the recovery in such action to the excess of profits after deducting the value of the permanent improvements made on the land by the defendant in good faith and in the honest belief, that the land was his own. (Tyler on Eject. 849; *Parsons* v. *Moses*, 16 Ia. 444).

This was the full extent of the relief to *bona fide* possessors of land both at law and in equity. Consequently, where the owner recovered his land in ejectment and made no claim for rents and profits, the *bona fide* adverse claimant, who had been ejected, could in no manner obtain any compensation for improvements made, while he was in possession of the land, however honest and reasonable his belief, that he was the owner, at the time. (*Graeme* v. *Cullem*, 23 Gratt. 296).

In order to extend the equitable principle thus adopted and applied, the General Assembly of Virginia enacted sec. 7 of chap. 72 of the acts of 1831–2, which in a modified form was re-enacted in the code of 1849 as chapter 136. This statute of Virginia is the foundation of the statute now in force in this State. Our present statute is found in chap. 91 of the Amd. Code, pp. 613-14. By the first section it is provided, in effect, that any defendant against whom there has been a judgment or decree for land, may present to the court a petition stating, that he, while holding the premises under a title believed by him to be good, made permanent improvements thereon, and praying, that he may be allowed the fair and reasonable value of the same. The next section provides for the assessment of such value by a jury, and the fourth section is as follows :

" If the jury be satisfied, that the defendant or those, under whom he claims, made on·the premises, at a time *when there was reason to believe* the title good, under which he or they were holding the said premises, permanent and valuable improvements, they shall estimate in his favor the value of such improvements, as were so made before notice in writing of the title, under which the plaintiff claims, as they are at the time such valuation is made."

In the case before us the plaintiff, Dawson, had a valid title by deed duly recorded to the lot in question. The grantor in this deed is the same grantor, under whom the defendant, Grow, claimed. The plaintiff's deed was on record, at the time the defendant took possession of the lot, and when she made the improvements, for which the Circuit Court has allowed to her compensation. It seems to me, that it would be extraordinary for this Court to sanction the allowance in such a case. As a general rule the owner of land, who has had his deed for the same legally recorded in the proper county, has done all he is bound to do, has given all the notice of his ownership, that diligence and prudence can require; and all persons dealing with the land do so at their peril and in complete subjection to the title of the owner thus duly recorded. The only exceptions to this rule are where the owner is guilty of fraud in permitting the improvements to be made with a knowledge of the defendant's claim and without giving notice to the defendant, and where the owner is guilty of gross *laches* in asserting his claim, after he is apprised of the fact that the defendant is making such improvements. In such cases in a court of equity and, I apprehend, under our statute the owner will not at law be permitted to enjoy the improvements thus placed upon the land in good faith and by his consent or connivance, without making compensation therefor. (2 Story's Eq. Jur., §§ 799*a*., 1,237; *Beauchler* v. *Walker*, 27 Gratt. 511.)

No person ought to be entitled to the favorable position of a *bona fide* holder of land, unless he entered and improved it in a case and under a title, which appeared to him after diligent and faithful enquiry to be free from suspicion. There is no moral obligation, which should compel a man to pay for improvements put upon his own land, which he never authorized, and which originated in a tort. (2 Kent's Com. 338.)

It is only the *bona fide* occupant, who is entitled to compensation for improvements; and it would be plainly inequitable to allow it to one, who acted with knowledge of the rights of the plaintiff. (*Green* v. *Biddle*, 8 Wheat. 1; *Jackson* v. *Loomis*, 4 Cow. 168; *White* v. *Moses*, 21 Cal. 34.)

Compensation for improvements made by an occupant on land, which had been acquired *mala fide* or with notice of an adverse title, will not be allowed. (*Patrick* v. *Marshall*, 2 Bibb 40; *McKim* v. *Moody*, 1 Rand. 58.)

Where the occupant had full means of obtaining knowledge of the plaintiff's title, he will not be entitled to compensation for his improvements. (*Barlow* v. *Bell*, 1 A. K. Marsh. 246; *Harrison* v. *Fleming*, 7 B. Mon. 537.)

In the case at bar there is no evidence even tending to prove, that the plaintiff was guilty of any fraud or *laches*. It is proved, that the plaintiff lived twenty miles from the lot on which the improvements were made; and there is not a particle of evidence, that he had any notice or knowledge of the making of the improvements until this action was instituted. The plaintiff had caused his deed for the lot to be recorded; and this, it seems to me, was all the law required of him in order to preserve and give notice of his title. That reasonable diligence and enquiry, which is required of every one, who poses as a *bona fide* claimant, made it imperative upon the defendant here, by examining the records of the county, to ascertain whether or not her vendor had the legal title to the lot which she purchased. If she had made this examination, she would have found, that this lot had been conveyed by her vendor to the plaintiff but a few months before the attempted conveyance to her. She certainly had the ready means of knowing, that she had no title to the lot, and having neglected to avail herself of this means of knowledge she was neither a *bona fide* occupant of the lot, nor was she within the protection and benefits of our statute. (*Jackson* v. *Loomis*, 15 Am. Dec. 349 note; *Woods* v. *Koebs*, 33 Gratt. 685.)

It is, however, contended for the defendant in error, that it is immaterial, whether or not the defendant had the *means* of ascertaining, that her title was bad ; and that the real question is, whether in fact she *believed* her title good, at the time she made the improvements, that is, if she did not believe her title bad, she is entitled to compensation, although she may have had notice of facts, which proved her title invalid. This position is wholly untenable. It is in positive conflict with any fair and reasonable interpretation

of the statute.    By reference to the statute before quoted it will appear, that the defendant must satisfy the jury, that she made the improvements " at a time, *when there was reason* to believe the title good, " under which she was holding.    So the question is not what the defendant believed, nor even what she had reason to believe, but what the jury or the court acting in lieu of a jury, ought to believe and find from the evidence.    If they are satisfied, that she had reason to believe or had the ready means of discovering, that her title was not good, then she is not entitled to compensation.    If this is not the true interpretation of the statute, then it can be rendered nugatory in every case, where the occupant purposely shuts his eyes to all means of informing himself, or refuses to believe all. evidence impeaching his title to the premises.    In *Woodhull* v. *Rosenthal*, 61 N. Y. 382, 397, the court says:  " As the defendants had full means of knowledge of the plaintiff's claim, they can not bring themselves within the rule, " which allows compensation for improvements.    In that case the defendants denied, that they had any *actual* notice of the plaintiff's title, and the proof failed to show, that they had such notice.    Compensation was denied by the court upon the sole ground, that the defendants had full *means* of knowledge.

It is further contended for the defendant in error, that our registry statutes, chap. 74 Amd. Code, have no application to this case.    It is insisted, that the only effect of these statutes is to prevent the defendant from claiming to have been a *bona fide* purchaser without notice, of the lot conveyed to her by the Glen-Elk Company as against the plaintiff; and that they could not and were not intended to have any effect upon the belief of the defendant, at the time she made the improvements.    This contention, it seems to me, is fully answered by what we have already said.    No one, who is not a *bona fide* claimant of the land, can be allowed compensation for improvements.    The recordation of the plaintiff's deed was constructive notice to the defendant of the plaintiff's title.    As to that title she occupied precisely the the same position, as if she had had actual notice of it.    She could not be a *bona fide* claimant as against the title of the plaintiff who had his deed legally recorded.    The registration

of the plaintiff's deed was both notice to the defendant and full means of knowledge to her of the plaintiff's title. Her refusal to search the records, or in any manner to avail herself of the means of knowledge open to her, was such negligence or bad faith as must necessarily preclude her the right to insist, that she had " reason to believe " her title good. In the face of these facts she had no legal reason to believe her title good ; and if she did in fact believe it good, she did so from gross negligence, or because she purposely ignored every means of knowledge, in order that she might indulge in her groundless belief. I am, therefore, of opinion, that the Circuit Court erred in finding upon the facts proved, that the defendant was entitled to compensation for the improvements placed up n the lot, that the judgment of the Circuit Court should be r· versed, and defendant's petition dismissed with costs.

REVERSED