567 S.E.2d 294

**TRAFALGAR HOUSE CONSTRUCTION, INC., a Pennsylvania corporation; Kimberly Industries, Inc., a West Virginia corporation; Trafalgar, Ltd., a West Virginia corporation; and Corotoman, Inc., a West Virginia corporation, Plaintiffs Below, Appellants,**

v.

**ZMM, INC., a West Virginia corporation; Chapman Technical Group, Ltd., a West Virginia corporation; the H.C. Nutting Company, an Ohio corporation; and DMJM/HTB, Inc., a foreign corporation, Defendants Below, Appellees.**

No. 30246.

Supreme Court of Appeals of West Virginia.

Submitted May 21, 2002.

Decided June 19, 2002.

Norman T. Daniels, Jr., Esq., Carl L. Fletcher, Jr., Esq., Daniels Law Firm, P.L.L.C., Charleston, for the Appellants.

Michael G. Gallaway, Esq., Burns, White & Hickton, LLC, Wheeling, Robert J. Ray, Esq., Burns, White & Hickton, LLC, Pittsburgh, PA, Charles M. Johnstone, III, Esq., Thaxton & Johnstone, L.L.P., Charleston, for Appellee ZMM, Inc.

Fred Adkins, Esq., J.H. Mahaney, Esq., Michael S. Bailey, Esq., Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Appellee Chapman Technical Group, Ltd.

Mark A. Swartz, Esq., Crystal S. Stump, Esq., Susan M. Murray, Esq., Swartz & Stump, L.C., Charleston, for Appellee The H.C. Nutting Co.

James R. Snyder, Esq., Jackson & Kelly, P.L.L.C., Charleston, Carol A. Joffe, Esq., Winston & Strawn, Washington, D.C., James F. Lee, Jr., Esq., Lee & McShane, PC, Washington, D.C., for Appellee DMJM/HTB, Inc.

PER CURIAM.

In this appeal of a January 25, 2001 order from the Circuit Court of Kanawha County, the appellants contend that the circuit court improperly granted summary judgment to the appellees. After careful consideration of the record, we find genuine issues of material fact exist for jury resolution, and reverse the circuit court's order.

## I.

The instant case arises from the construction of a Job Corp facility for the United States Department of Labor ("the DOL") in Charleston, West Virginia. The DOL hired appellee DMJM/HTB to select a site for the facility, and in turn DMJM/HTB chose appellee ZMM, Inc., to be the architect for the facility. ZMM, Inc., then contracted with appellees Chapman Technical Group, Ltd., and The H.C. Nutting Company to perform various civil and geotechnical engineering of the site.

Once a site was chosen and plans crafted for the construction of the facility, bid documents were prepared by the appellees so that contractors and subcontractors could estimate their costs. As the lowest bidder on the government project, appellant Trafalgar House Construction, Inc. ("Trafalgar House") was hired as the general contractor for the project. Trafalgar House subcontracted the task of moving rock, dirt and otherwise preparing the site for construction to appellant Kimberly Industries, Inc. ("Kimberly"), which also relied upon the bid documents in preparing its estimate.

The dispute between the parties is a result of alleged errors contained in the bid documents, primarily regarding the amounts of dirt and of rock needed to complete the preparation of the site.

In April 1995, Kimberly began excavating portions of the site and discovered significant amounts of "uncontrolled fill," material which could not support the construction of the buildings. Kimberly was required by the DOL to remove the unacceptable uncontrolled fill, dispose of it, and replace it with acceptable engineered fill. Approximately 88,000 cubic yards of material was removed, and an off-site mine was established so that 88,000 cubic yards of engineered fill could be imported.

Also, while the bid documents estimated that 27,000 cubic yards of rock would be needed to complete the project, Kimberly discovered that 46,000 cubic yards of rock were actually needed. Furthermore, while 27,000 cubic yards of rock were available on the site, Kimberly discovered that only 10,000 cubic yards were usable; the remainder was of poor quality and had to be removed from the site as waste. Kimberly was required to set up an off-site quarry and mine 36,000 cubic yards of rock to be imported for use at the site.

Kimberly argues that it incurred nearly $5 million in additional costs excavating and replacing the uncontrolled fill and in importing usable rock fill. As early as July 1995, both Trafalgar House and Kimberly were retaining engineering firms and attorneys to investigate methods to recover the additional costs incurred. Both appellants sought to determine why the bid documents prepared by the appellees misrepresented the actual conditions discovered under the surface of the construction site, and sought to establish the extent to which subsurface conditions differed from those portrayed in the bid documents so as to support a claim for additional compensation under the contract.

On April 5, 1996, Kimberly filed a "Request for Equitable Adjustment" with the DOL to obtain additional compensation under its contract. The Request for Equitable Adjustment alleged a "Type I" condition existed at the site, that is, that the on-site subsurface conditions varied materially from those indicated in the plans and other bid documents. Kimberly asserted that the additional costs "stem[med] from differing site conditions or defective specifications regarding the anticipated soils on the project."

In order to litigate its Request for Equitable Adjustment claim with the DOL, Kimberly filed a Freedom of Information Act request in August 1996. The DOL did not respond to the Freedom of Information Act request until December 1996, and then only produced a few documents. In fact, the DOL did not rule on the Request for Equitable Adjustment until 1999.

In April 1997, two years after beginning construction, appellant Kimberly sued appellant Trafalgar House to recover the additional costs of construction. Using the authority of the court, during March and April 1998 the appellants subpoenaed all of the plans and other project documents from the DOL and the appellees.

The appellants assert that on or about April 15, 1998, in the thousands of pages of documents they received in response to the subpoenas, they discovered that the appellees knew before construction began that there would be shortages of dirt and rock on the site, but deleted references to those shortages from bid documents that were provided to the appellants. The appellants inferred from the documents that the appellees knew there would be a shortage of usable material, but concealed that knowledge in an attempt to shift the cost of those shortages onto unsuspecting contractors such as the appellants.

Shortly thereafter the appellants settled their dispute with each other, and on July 1, 1998, filed the instant suit against the appellees. The appellants asserted that the appellees had fraudulently and/or negligently misrepresented the site's adverse subsurface conditions in the bid documents.

After substantial discovery, the appellees filed motions for summary judgment. The appellees first argued that under the statute of limitation, the appellants had two years from the date their cause of action was discovered to file a lawsuit. Citing to documents from the appellants' files, the appellees argued that during 1995, and certainly as late as the April 5, 1996 Request for Equitable Adjustment, the appellants knew that the plans and bid documents prepared by the appellees were "defective" and had "misrepresented" site conditions. The appellees therefore argued that the appellants' July 1, 1998 action was barred by the statute of limitations.

Additionally, the appellees contended that the appellants had conducted their own investigation of the site before bidding on the contract, and had even disregarded calculations of rock and dirt made by the appellees in favor of their own. In other words, the appellees argued that even if they made

fraudulent misrepresentations of the site conditions, the appellants did not rely upon those representations.

In an order dated January 25, 2001, the circuit court agreed with the appellees. The order concluded that the appellants knew, no later than April 5, 1996, that the appellees had failed to disclose important information in the bid documents, such that the documents "misrepresented" the site conditions. The circuit court therefore held that the appellees' action for fraudulent or negligent misrepresentation was barred by the statute of limitation. Additionally, the circuit court concluded that the appellants had conducted an independent investigation of the site, and had therefore not relied upon any representations contained in the bid documents prepared by the appellees.

This appeal by the appellants followed.

## II.

■ We review a circuit court's order granting summary judgment *de novo*. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

■ In reviewing summary judgment, this Court will apply the same test that the circuit court should have used initially, and must determine whether "it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). As with the circuit court, we "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion," that is, the appellant. *Painter v. Peavy*, 192 W.Va. at 192, 451 S.E.2d at 758.

■ "The circuit court's function at the summary judgment stage is not to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Syllabus Point 3, *Painter v. Peavy*. "Summary judgment should be denied 'even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995), *quoting Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir.), *cert. denied*, 342 U.S. 887, 72 S.Ct. 178, 96 L.Ed. 666 (1951).

The appellants challenge the circuit court's summary judgment order on two grounds. First, they contend that genuine issues of material fact can be inferred from the evidence concerning when they discovered that the appellees allegedly fraudulently or negligently misrepresented the subsurface conditions of the site.

■ Under West Virginia law, claims in tort for negligence, professional negligence, and misrepresentation (fraudulent or negligent) are governed by a two-year statute of limitation. *W.Va.Code*, 55–2–12 [1959].[1] The appellant contends that the running of the two-year limitation period in this case was "tolled" through the operation of the "discovery rule." Under the discovery rule, a statute of limitation is tolled and does not begin to run until a claimant knows or by reasonable diligence should know of his claim. Syllabus Point 1, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). "The 'discovery rule' is generally applicable to all torts, unless there is a clear statutory prohibition of its application." Syllabus Point 2, *Cart v. Marcum*. We clarified the elements a person must show to benefit from the equitable provision of the discovery rule in Syllabus Point 4 of *Gaither v. City Hospital, Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997):

In tort actions, unless there is a clear statutory prohibition to its application, under the discovery rule the statute of limita-

---

1. *W.Va.Code*, 55–2–12 [1959] states:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have

accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

tions begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

The appellants concede that they knew in April 1995 that the bid documents "misrepresented" the actual site conditions. They knew they had an "injury" in the sense that additional construction costs were incurred because the bid documents, drafted by the appellees, did not correctly represent the amount of usable rock available and needed, and the amount of uncontrolled fill.

The appellants argue, however, that the term "misrepresent" is essentially a term of art in the construction industry. The appellants contend that everyone involved with the construction project knew by April 1995 that the bid documents "misrepresented" the actual site conditions. The appellants argue that it is difficult to accurately predict, even with extensive pre-construction surveys, what subsurface conditions of rock and dirt will be like when construction actually begins. Hence, the appellants' discovery of a difference between the documented and actual conditions says nothing about when they discovered the conduct—or misconduct—of the appellees in creating the bid documents. The appellants contend they believed, until April 1998, that had the appellees known of adverse subsurface site conditions before construction began, they would have informed the appellants.

After carefully examining the record, we agree with the appellants' position. In Syllabus Point 4 of *Gaither v. City Hospital, supra*, we established a rule that "tolls the statute of limitations until a plaintiff, acting as a reasonable, diligent person, discovers the essential elements of a possible cause of action[.]" 199 W.Va. at 714, 487 S.E.2d at 909. A jury could draw different conclusions from the appellants' use of the term "misrepresentation" in documents discussing the appellees' bid documents, and could conclude that the appellants believed the appellees

innocently misrepresented the subsurface site conditions. In other words, questions remain concerning when the appellants first learned that the appellees fraudulently or negligently misrepresented their actual knowledge of the subsurface site conditions.

■ "In the great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury." 199 W.Va. at 714–15, 487 S.E.2d at 909–910. We believe that the instant case presents genuine questions of material fact regarding whether the appellants' claim is barred by the statute of limitation. The circuit court therefore erred on this point.

■ The second issue raised by the appellants concerns the circuit court's conclusion that the appellants never detrimentally relied upon the misrepresentations, if any, made by the appellees.

■ To establish a claim for fraud under West Virginia law, a plaintiff must establish three essential elements:

> The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.

Syllabus Point 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981). Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud. *Silva v. Stevens*, 156 Vt. 94, 589 A.2d 852, 857 (1991).

■ However, this Court has indicated that if a plaintiff performs an "independent investigation" of facts which are "easily ascertainable," that plaintiff cannot later complain of detrimentally relying upon fraudulent misrepresentations or concealment by the defendant. As we indicated in Syllabus Point 5 of *Jones v. McComas*, 92 W.Va. 596, 115 S.E. 456 (1922), when a plaintiff "undertakes to inform himself from other sources as to matters easily ascertainable, by personal investigation, and the defendant has done

nothing to prevent full inquiry, he will be deemed to have relied upon his own investigation and not upon the representations of the seller." *In accord,* Syllabus Point 5, *Cordial v. Ernst & Young,* 199 W.Va. 119, 483 S.E.2d 248 (1996).

▮▮▮ The "independent investigation" doctrine is not an absolute defense, and has a "long recognized qualification." *Cordial v. Ernst & Young,* 199 W.Va. at 132, 483 S.E.2d at 261. As we stated in part in Syllabus Point 3 of *Horton v. Tyree,* 104 W.Va. 238, 139 S.E. 737 (1927):

> It is not necessary that the fraudulent representations complained of should be the sole consideration or inducement moving the plaintiff. If the representations contributed to the formation of the conclusion in the plaintiff's mind, that is enough[.]

We discussed this qualification to the independent investigation doctrine more fully in *Cordial v. Ernst & Young,* stating:

> The mere fact, however, that some investigation is made by the representee is usually held, particularly in the late cases, not to amount in and of itself to a bar to the right to rely upon representations. The representee who attempts investigation may have a right to rely upon the representations where expert knowledge is necessary to an effectual investigation, which knowledge is possessed by the party making the representations, and not by the other. Moreover, if the representee, instead of investigating as fully as he may, makes only a partial investigation and relies in part upon such investigation and in part upon the representations of the adverse party, and is deceived by such representations to his injury, it is held that he has a right to rely on, and may maintain an action for, such deceit. This rule is particularly applicable where the representations were designed to deter further investigation. Furthermore, the fact that one makes an examination or inquiries does not necessarily show that he did not rely on the false representations of the other party.

199 W.Va. at 132–33, 483 S.E.2d at 261–62, *quoting* 37 Am.Jur.2d, Fraud and Deceit, § 237 (1968).

The circuit court in the instant case found that because the appellants performed an independent investigation and did their own calculations of the amount of fill available on the site, they could not have relied upon any misrepresentations or misstatements by the appellees made about the amount of fill on the site. The circuit court therefore held that the appellants' claims lacked the essential element of detrimental reliance.

The appellants argue, however, that they relied upon the absence of any warning by the appellees that there was inadequate fill on the site to complete the project, and the appellees' affirmative indications that there was a sufficient amount of material available, as proof of the accuracy of their own calculations. The appellants argue that this reliance was reasonable in light of (a) the expertise of the appellees in conducting site surveys; (b) the fact that the appellees spent more than two years investigating the construction site and preparing the bid documents; and (c) the appellees' duty to divulge any anticipated shortage of rock or dirt in the bid documents.

After carefully examining the record, we agree with the appellants' arguments. The appellees arguably knew of the true subsurface conditions of the site, and anticipated significant shortages of rock and dirt. While the appellees' internal documents suggest there were known problems with the subsurface conditions of the site, the appellees did not disclose this information to the appellants in the bid documents.

A jury could reasonably conclude that the appellees concealed facts regarding the subsurface conditions of the site from the appellees, with a fraudulent intent, facts that the appellants had a duty to disclose. A jury could also reasonably conclude that, even though the appellants conducted an independent investigation of the site, the representations made by the appellees contributed in part to the formation of the conclusion by the appellants that sufficient quantities of usable rock and dirt existed on the site to complete the project.

It therefore appears that genuine questions of material fact exist regarding whether the appellants reasonably relied upon the allegedly fraudulent representations made by the appellees. The circuit court therefore erred in granting summary judgment on this point.

### III.

■ The circuit court's January 25, 2001 summary judgment order is reversed, and the case is remanded for further proceedings.[2]

Reversed and Remanded.

---

2. The appellants assert that the circuit court refused to consider affidavits submitted by the appellants in opposition to the appellees' motions for summary judgment. As we stated in Syllabus Point 3 of *Haga v. King Coal Chevrolet Co.,* 151 W.Va. 125, 150 S.E.2d 599 (1966):

Upon motion for a summary judgment under Rule 56, R.C.P. all exhibits and affidavits and other matters submitted by both parties should be considered by the court, and such motion can be granted only when it is clear that no genuine issue of material fact is involved.

Because we reverse the circuit court's order on other grounds, we do not consider this argument by the appellants. However, on remand, the circuit court should endeavor to comply with the mandate of *Haga* should the parties file additional motions for summary judgment.