595 S.E.2d 308

**Betty Jo KIDD and James E. Kidd, Plaintiffs Below, Appellants**

v.

**W. Quay MULL, II, Mull Realty, WQM Industries, Inc., Teresa Markwas, Individually and as an Agent of Mull Realty, WQM Industries, Inc., and W. Quay Mull, II, Mike Piazza, Individually and as an Agent of Mull Realty, and W. Quay Mull, II, Defendants Below, Appellees.**

No. 31375.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2004.

Decided March 15, 2004.

Ronald Wm. Kasserman, Siebert & Kasserman, L.C., Wheeling, for the Appellants.

Charles J. Kaiser, Jr., Richard N. Beaver, Denise Knouse–Snyder, Phillips, Gardill, Kaiser & Altmeyer, Wheeling, for the Appellees.

ALBRIGHT, Justice.

This is an appeal by Betty Jo Kidd and James E. Kidd (hereinafter "Appellants") from a July 22, 2002, final order of the Circuit Court of Marshall County granting summary judgment to W. Quay Mull, II, Mull Realty, WQM Industries, Inc., Teresa Markwas, and Mike Piazza (hereinafter "Appellees"). On appeal, the Appellants contend that the lower court erred by granting summary judgment to the Appellees and that genuine issues of material fact exist with regard to the Appellants' claims of fraud, negligent misrepresentation, and unjust enrichment. Upon thorough review of the briefs, record, arguments of counsel, and applicable precedent, this Court finds that the lower court committed reversible error by granting summary judgment on the fraud and negligent misrepresentation claims. With regard to the grant of summary judgment on the Appellants' unjust enrichment claim, however, we affirm.

### I. Factual and Procedural History

This litigation is premised upon circumstances surrounding a lease/purchase agreement signed by the Appellants on property owned by W. Quay Mull, II, at 103 10th Street in Moundsville, West Virginia. Prior to signing the lease/purchase agreement, Teresa Markwas, an employee of WQM Industries, Inc.,[1] showed Appellants the property and provided them with a map indicating that the property included riverfront property. Mrs. Kidd testified that Teresa Markwas showed her a property line stake at the edge of the river bank, and Mrs. Kidd further testified that she informed Ms. Mark-

was that the property would be rented only if it had riverfront access. Ms. Markwas denied that she was told that the lease of the property was dependent upon the riverfront access. Riverfront access was critical to Appellants based upon their intention to build a dock and sell refreshments to pleasure crafts on the Ohio River, by the business name "Captain Jim's" as registered on their business permit. The Appellants testified that they inquired about any surveys of the property and were advised that a survey had recently been done.

The Appellants testified that they were further informed that Mr. Mike Piazza, who had allegedly walked the lines with the surveyor, would meet them to walk the lines of the property. While Mr. Piazza denies showing the property,[2] Appellants contend that they met Mr. Piazza, that he walked the lines of the property with them, and that he informed them that the property did include the riverfront area.

The initial lease/purchase agreement dated May 29, 1997, was rescinded[3] and replaced with another lease/purchase agreement dated July 29, 1997. Both versions provided that the term of the agreement was June 1, 1997, through May 31, 1998.[4] The operative agreement contained a purchase option provision, stating: "This option may be exercised by giving written notice of the exercise to Lessor prior to May 31, 1998." Sometime in May 1998, Appellants orally informed Ms. Markwas that they intended to exercise their purchase option. Ms. Markwas testified that she informed Mr. Mull that Appellants wished to purchase the property. During Appellants' subsequent attempt to obtain financing for the purchase of the property, Appellants were advised that the property did not actually include the riverfront area.

---

1. WQM Industries is owned by W. Quay Mull, II.

2. A witness, Mr. Thomas Lee Stanley, testified that Mr. Piazza had admitted to him that he met Appellants and showed them the property in question.

3. The Appellants apparently signed the first lease agreement in conjunction with their former part-

ners, Robert and Betty Bird. Subsequent to the dissolution of that partnership, the Appellants signed a new lease/purchase agreement with the Appellees, with no changes affecting this matter.

4. The Appellants also operated a flea market and furniture outlet business on the property.

Ms. Markwas testified that she had mistakenly believed that the property included the riverfront. When Ms. Markwas contacted Mr. Mull concerning the riverfront portion of the property, Mr. Mull informed her that he thought access to the riverfront was provided by a right of way rather than by ownership in fee simple. When Ms. Markwas thereafter spoke with Mr. Mull's attorney, Mr. C.J. Kaiser, to clarify the issue, Ms. Markwas was informed that the land offered for lease/sale did not contain riverfront access either by right of way or ownership in fee simple. However, the Appellees' title attorney expert witness, Mr. Frederick E. Gardner, later opined that the property included a right of way to the river over property owned by Grave Creek Enterprises.[5] Specifically, Mr. Gardner testified: "Well, he may have that right [to build docks], but it's not specifically set forth, and I would, as an attorney, recommend that he either get the permission of Grave Creek Enterprises to build that or to seek a declaratory judgment action in the Circuit Court of Marshall County." There is no indication in the record that Grave Creek Enterprises was contacted regarding the possibility of obtaining permission to build boat docks on its land.

When the bank through which the Appellants had sought a loan discovered that the land might not include riverfront property, it declined the loan based upon concerns with the likely cash flow of the planned business. The Appellants filed a civil action against the Appellees, alleging fraud, negligent misrepresentation, and unjust enrichment from the improvements the Appellants made to the property during the term of the lease. The lower court granted summary judgment in favor of the Appellees on all claims, and the Appellants appeal to this Court.

## II. Standard of Review

In syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), this Court stated that "[a] circuit court's entry of summary judgment is reviewed *de novo*." We have also consistently maintained that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Further, in syllabus point four of *Painter*, we explained that "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." 192 W.Va. at 190, 451 S.E.2d at 756. In syllabus point three of *Painter*, we stated: "The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." *Id.*, 451 S.E.2d at 756.

## III. Discussion

### A. Claim of Fraud

With regard to the claim of fraud, the Appellants allege that the lower court's grant of summary judgment was improper based upon the following: (1) there is no dispute that misrepresentations were made that the property extended to the riverfront; (2) genuine issues of material fact exist regarding whether the alleged right of way to the river would permit the construction of boat docks at river's edge; (3) genuine issues of material fact exist regarding whether the lease/purchase agreement would have been entered into if the Appellants had known that the property did not included riverfront; (4) genuine issues of material fact exist regarding whether the Appellants were on notice concerning the status of the property; (5) it is uncontested that the Appellants did not have a title search conducted prior to signing the lease/purchase agreements; and (6) Appellants made improvements to the property during the lease period after they decided to exercise their option to purchase. It is also apparent from the record that the evidence is

---

**5.** Mr. Gardner opined that the right of way was mistakenly omitted from a prior deed due to a scriverner's error.

conflicting regarding Appellants' requirements when searching for property and how Appellees responded to Appellants' requirements and inquiries.

 In syllabus point one of *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981), this Court explained:

> The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737 (1927).

*See also Cordial v. Ernst & Young,* 199 W.Va. 119, 483 S.E.2d 248 (1996); *Muzelak v. King Chevrolet, Inc.,* 179 W.Va. 340, 368 S.E.2d 710 (1988). In *Lengyel,* as in the present case, the appeal involved "questions relating to an action for fraud arising from a real estate transaction and the appropriateness of summary judgment in such a case." 167 W.Va. at 273, 280 S.E.2d at 67. In dealing with issues surrounding the distinction between a "mobile home with additions" and a "modular home," this Court in *Lengyel* observed:

> This alone created a genuine issue of fact. Which was it, a mobile home or a modular home, or are they the same thing? The question cannot be resolved on this record unless you accept the testimony of one party and ignore the testimony of another party. This is not the type of determination to be made on a motion for summary judgment.

*Id.* at 281, 280 S.E.2d at 71.

 In the case *sub judice,* the existence of the essential elements of an action for fraud, as outlined in *Lengyel,* can only be determined by resolution of several key factual issues, all ardently disputed by the parties. The parties produced conflicting evidence regarding issues as fundamental as the character of the ownership of the property in question. While the Appellants were informed that the property included the riverfront, there was disagreement regarding whether a right of way existed and, if so, whether it could include the right to build a boat dock on the right of way.[6] Despite this incongruity in the evidence, the lower court concluded as follows:

> The unrefuted evidence [Mr. Gardner] in this matter discloses that the 40 foot strip of property is a right of way that goes with the subject property, provides access to the Ohio River, and legally authorizes the Plaintiffs to build boat docks. The Defendants, therefore, made no material misrepresentations to the Plaintiffs.

Based upon the evidence then before the lower court, we find the court's conclusion, in the context of summary judgment, simply erroneous. Aside from the conflicting evidence regarding Appellants' announced requirements for suitable property to rent and possibly buy, as well as conflicting evidence regarding how Appellees responded to such announced requirements, if any, the record is in disarray as to the actual state of the title to the riverfront access. Most particularly, the record lacks any definitive evidence as to what title Grave Creek Enterprises, an absent party, in fact claimed or held with respect to the riverfront access property and the ability of the Appellants to construct permanent buildings on that riverfront access. Finally, the opinion of Appellees' counsel[7] as to the state of the title is hardly dispositive of these critical issues at the summary judgment stage. Clearly, further development of the facts was desirable to clarify what law was to be properly applied in all these circumstances.[8] As emphasized above,

---

**6.** West Virginia Code § 17–18–11 (1923) (Repl. Vol.2000) provides that "Any person owning land upon a water course may erect a wharf on the same. . . ."

**7.** As explained above, Mr. Gardner, as an expert for the Appellees, also testified that the right to build boat docks could only be implied and should be expressly obtained from the owner,

Grave Creek Enterprises, or through a declaratory judgment action seeking to obtain authority to construct on the right of way.

**8.** On remand, it would appear that a thorough examination of the right to construct boat docks on any right of way over property owned by Grave Creek would be desirable.

syllabus point three of *Aetna Casualty* explains that "summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and *inquiry concerning the facts is not desirable to clarify the application of the law*." 148 W.Va. at 160, 133 S.E.2d at 771 (emphasis supplied).

■ The lower court's conclusion also ignores the reality that regardless of any ultimate determination of whether Mr. Mull owned the riverfront property or simply enjoyed a right of way to the riverfront over Grave Creek property, Appellants were provided with a map of the property prior to the lease term which expressly indicated that the property included riverfront property. Even a legitimate mistake does not negate a cause of action for fraud, as this Court specified in syllabus point one of *Horton v. Tyree,* 104 W.Va. 238, 139 S.E. 737 (1927), as follows:

Where one person induces another to enter into a contract by false representations which he is in a situation to know, and which it is his duty to know, are untrue, he, in contemplation of law, does know the statements to be untrue, and consequently they are held to be fraudulent, and the person injured has a remedy for the loss sustained by an action for damages. It is not indispensable to a recovery that the defendant actually knew them to be false.

In similar vein, this Court specified in *Cordial* that "by definition, fraud does not require in all circumstances that its perpetrator have actual knowledge of the material falsity of a statement." 199 W.Va. at 130, 483 S.E.2d at 259.

Further, in holding that no genuine issues of material fact existed, the lower court appears to have credited the Appellees' argument that the Appellants were not justified as a matter of law in relying upon the Appellees' representations because the Appellants did not attempt to independently ascertain the actual ownership interest being offered to them by the Appellees, through title

search or survey. Such argument is premised upon the essentially equitable principles encompassed within the independent investigation doctrine and the doctrine of constructive notice, examined below.

■ The independent investigation doctrine was adopted by this Court in syllabus point five of *Jones v. McComas,* 92 W.Va. 596, 115 S.E. 456 (1922), wherein this Court held:

Though a purchaser may rely upon particular and positive representations of a seller, yet *if he undertakes to inform himself* from other sources as to matters easily ascertainable, by personal investigation, and the defendant has done nothing to prevent full inquiry, he will be deemed to have relied upon his own investigation and not upon the representations of the seller.

92 W.Va. at 597, 115 S.E. at 456 (emphasis supplied). In syllabus point two of *Staker v. Reese,* 82 W.Va. 764, 97 S.E. 641 (1918), this Court recognized that "one to whom a representation has been made as an inducement to enter into a contract has a right to rely upon it as true *quoad* the maker, without making inquiry or investigation to determine the truth thereof." *See also Morrison v. Bank of Mount Hope,* 124 W.Va. 478, 20 S.E.2d 790 (1942); *Gall v. Cowell,* 118 W.Va. 263, 190 S.E. 130 (1937). That underlying principle is well settled in this jurisdiction, and it is *only* where the "purchaser *does* undertake further inquiry into the facts" that "he is charged with and presumed to rely on everything his investigation uncovers." *Rockley Manor v. Strimbeck,* 181 W.Va. 313, 315, 382 S.E.2d 507, 509 (1989).

■ The Appellants in the present case did not undertake personal, independent investigation;[9] consequently, the principles of the independent investigation doctrine are not dispositive of our decision herein. Moreover, even if the doctrine of independent investigation were directly implicated in this case, this Court's decision in *Trafalgar House Construction, Inc., v. ZMM, Inc.,* 211

---

9. It is undisputed that the Appellants did not undertake independent examination through title search or survey. Mr. Kidd did, however, visit the Marshall County Courthouse during his attempt to obtain financing. He sought to determine how far out into the Ohio River he could build boat docks. He testified that he was advised by a county employee that the land in question did not extend to the river.

W.Va. 578, 567 S.E.2d 294 (2002), clarifies that "[t]he 'independent investigation' doctrine is not an absolute defense..." within the context of a fraud claim. *Id.* at 585, 567 S.E.2d at 301.

The Appellees cite *Somerville v. Jacobs,* 153 W.Va. 613, 170 S.E.2d 805 (1969), and *Dawson v. Grow,* 29 W.Va. 333, 1 S.E. 564 (1887), in support of their contention that the Appellants were not justified in relying upon any representations made by the Appellees. First, neither *Somerville* nor *Dawson* dealt directly with a claim of fraud, as we have in the case *sub judice;* second, *Somerville* explicitly carved the issue of fraud out of the equation by specifying that the "controlling question for decision" involved the competing rights of parties where a mistake had been made "not induced or permitted by" the owner of the property "who is not guilty of any fraud or inequitable conduct...." 153 W.Va. at 616–17, 170 S.E.2d at 807.

■ Of greater assistance in this evaluation are the decisions of this jurisdiction and others regarding the doctrine of constructive notice, placing a purchaser on constructive notice of all facts which could have been discovered by searching records of duly recorded instruments, and its impact upon an action for fraud. Syllabus point five of *Martin v. South Bluefield Land Co.,* 81 W.Va. 62, 94 S.E. 493 (1917), crystalized this issue as follows:

> Where a vendor of land, through an agent, falsely represents as true a fact peculiarly within his knowledge, which if true is disclosed by a public record, and the vendee is misled thereby to his detriment, his failure to examine such record to verify the representation will not preclude his right of action or claim to equitable relief for the fraud and deceit.

This Court also observed, in *Brannon v. Riffle,* 197 W.Va. 97, 475 S.E.2d 97 (1996), that the doctrine of constructive notice did not preclude factual inquiry into the issue of when the parties gained knowledge of the validity of a lease at issue. In *Brannon,* the Appellants, as purchasers of the property in question, argued that summary judgment was improper where factual issues existed regarding when the Appellees had knowledge of the lapse of certain oil and gas leases. In addressing this claim, this Court observed as follows:

> The circuit court reasoned that even if there had been a mutual mistake of fact with regard to the validity of the Eddy lease, the doctrine of constructive notice precluded any reliance on such mistake. Conversely, Appellants maintain that these factual inquiries are not precluded by the doctrine of constructive notice. We agree.

197 W.Va. at 100, 475 S.E.2d at 100.

Other jurisdictions have also addressed claims such as those made by the Appellees in the present case. In *ECC Parkway Joint Venture v. Baldwin,* 765 S.W.2d 504 (Tex. App.1989), for instance, the Texas court encountered the issue of whether the purchaser's constructive notice from deed records regarding height restrictions on the property was a defense to the purchaser's cause of action against the vendor and broker for fraud, negligent misrepresentation, breach of fiduciary duty, and violation of the Texas Deceptive Trade Practices Act. The court evaluated the defendants' contentions, forwarded in motions for summary judgment, that the plaintiff could not recover for any concealment since the plaintiff had constructive notice from deed records regarding the existence of a height restriction. 765 S.W.2d at 508–09. In examining the principles underlying the applicable law, the *Baldwin* court noted that deed records "afford notice of interests conveyed in real property for the purpose of protecting those interests and subsequent grantees, not for the purpose of protecting perpetrators of fraud." *Id.* at 509; *see also Ojeda de Toca v. Wise,* 748 S.W.2d 449, 451 (Tex.1988). The *Baldwin* court therefore concluded that constructive notice was not a bar to the purchaser's cause of action. 765 S.W.2d at 509; *but see Bache v. Owens,* 280 Mont. 106, 929 P.2d 217 (1997) (holding that vendors had no affirmative duty to disclose existence of easement where easement was matter of public record).

Similarly, in *Fireison v. Pearson,* 520 A.2d 1046 (D.C.App.1987), the District of Columbia Court of Appeals explained that a real estate purchaser is not required to examine

land records and "clearly has a right to rely on the vendor's representations as to the boundaries and acreage of the land." 520 A.2d. at 1050, *citing Piper v. Jenkins,* 207 Md. 308, 113 A.2d 919, 921 (1955). The *Fireison* court explicitly held that "[e]ven when the means of ascertaining the falsity of the vendor's representations are known and accessible, the purchaser's failure to review the land records will not bar his recovery." *Id.* Only when the purchaser actually undertakes to make an investigation of the records will his recovery be jeopardized. *Id.* "Thus, the crucial question is whether [the purchaser]—by himself or through his agent—undertook an examination of the land records." *Id.* This is based upon the logical principle that "once the purchaser assumes the burden of an examination he cannot say that he was deceived to his injury where such examination discloses the correct information." *Ryan v. Brady,* 34 Md.App. 41, 366 A.2d 745, 753 (1976).

The Iowa court succinctly summarized this concept in *McGibbons v. Wilder,* 78 Iowa 531, 43 N.W. 520 (1889), as follows:

> This court has repeatedly held, in effect, that a party may rely upon representations as to the ownership of property, its location, and the like; and that, to entitle him to recover for fraudulent representations, he is not bound to show that he instituted inquiry by consulting records or plats, or employing a surveyor, or the like.

43 N.W. at 522.

This method of reasoning is also embraced by the Restatement (Second) of Torts § 540 (1977), in its recognition of the following: "The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation." Comment b further provides:

> The rule stated in this Section is applicable even though the fact that is fraudulently represented is required to be recorded and is in fact recorded. The recording acts are not intended as a protection for fraudulent liars. Their purpose is to afford a protection to persons who buy a recorded title against those who, having obtained a paper title, have failed to record it. The purpose of the statutes is fully accomplished without giving them a collateral effect that protects those who make fraudulent misrepresentations from liability.

*See also* W. Prosser & W. Keaton, Torts (5th Ed.) § 108, p. 752 ("The plaintiff is not required ... to examine public records to ascertain the true state of title claimed by the defendant"). In *Kavarco v. T.J.E., Inc.,* 2 Conn.App. 294, 478 A.2d 257 (1984), the Connecticut court, relying in part upon the Restatement, held as follows: "To shield a seller with a buyer's negligence in not finding out whether the representation was true or false would be to give the seller the fruit of his falsehood." 478 A.2d at 262.

Restatement (Second) of Torts § 541 (1977) presents an additional element, recognizing that "[t]he recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." [10] This recognition is consistent with this Court's statement in *Tri–State Asphalt Products, Inc. v. McDonough Co.,* 182 W.Va. 757, 391 S.E.2d 907 (1990), to the effect that "one cannot rely blindly upon a representation without suitable investigation and a reasonable basis."

---

**10.** The comment to Restatement § 541 explains as follows:

> Although the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye, if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect. On the other hand, the rule stated in this Section applies only when the recipient of the misrepresentation is capable of appreciating its falsity at the time by the use of his senses. Thus a defect that any experienced horseman would at once recognize at first glance may not be patent to a person who has had no experience with horses.

182 W.Va. at 762, 391 S.E.2d at 912, *quoting Elk Refining Co. v. Daniel*, 199 F.2d 479, 482 (4th Cir.1952). Further, it fully comports with the primary language in syllabus point one of *Lengyel*, establishing that one of the elements of a fraud claim is that the plaintiff relied upon the misrepresentation "and was *justified under the circumstances* in relying upon it." 167 W.Va. at 273, 280 S.E.2d at 67.

These principles were also utilized over a century ago by the United States Supreme Court in *Shappirio v. Goldberg*, 192 U.S. 232, 24 S.Ct. 259, 48 L.Ed. 419 (1904), a case involving a claim of fraud wherein the purchaser alleged that the vendor falsely represented that an adjacent property was included in the sale of the subject property. A correct description of the property was provided in the deed and the recorded chain of title. Further, an agent for the purchaser had knowledge of the actual extent of the property being purchased. In making its ruling, the Supreme Court noted two distinct types of cases; those in which the purchaser has undertaken independent investigation and those in which he has not. The Court explained: "There are cases where misrepresentations are made which deceive the purchaser, in which it is no defence to say that had the plaintiff declined to believe the representations and investigated for himself he would not have been deceived." *Id.* at 241, 24 S.Ct. 259.

This is exactly the type of case we presently have before this Court. In evaluating the contentions of the parties and the guiding precedent, we conclude that utilization of the doctrine of constructive notice in this context would defeat most real estate fraud actions by resulting in a finding that the component of justifiable reliance, identified as the second component of the essential elements of fraud, is absent where a plaintiff fails to discover legal realities which could have been discovered upon reasonable investigation. That is clearly not the intent of the West Virginia cases examined above; nor is it consistent with the intent of the apposite cases from other jurisdictions or the Restatement of Torts. We consequently hold that the doctrine of constructive notice will not defeat a cause of action for fraud or negligent misrepresentation where the entity asserting the cause of action did not undertake independent investigation to ascertain the truth of the allegedly fraudulent representation.

Based upon that conclusion, we reverse the summary judgment granted by the lower court on the Appellants' fraud claim and remand this case for further proceedings on that cause of action.

B. Claim of Negligent Misrepresentation

As both parties have correctly asserted, a successful claim for negligent misrepresentation would require a finding that Ms. Markwas was a real estate broker and thereby maintained a special relationship or duty to the Appellants. *See Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994)[11]

The Appellants assert, and we agree, that a question of material fact exists regarding whether Ms. Markwas was a real estate broker with sufficient special relationship or duty toward the Appellants. A determination of whether a particular individual is acting within a capacity which is to be considered a "real estate broker" is a factual issue for jury determination, just as this Court has held that the factual distinction between an agent and an independent contractor must be resolved by a jury. *See Levine v. Peoples Broadcasting Corp.*, 149 W.Va. 256, 261–62, 140 S.E.2d 438, 441–42 (1965) (holding that "[w]here the evidence relative to whether a particular person is an independent contractor or employee is in conflict or even if it be not in conflict, where more than one inference can be drawn therefrom an issue is

---

**11.** Syllabus point one of *Teter* explains as follows:

A vendor's real estate broker may be liable to a purchaser if the broker makes material misrepresentations with regard to the fitness or habitability of residential property or fails to disclose defects or conditions in the property that substantially affect its value or habitability, of which the broker is aware or reasonably should be aware, but the purchaser is unaware and would not discover by a reasonably diligent inspection. It also must be shown that the misrepresentation or concealment was a substantial factor in inducing the purchaser to buy the property.

presented for jury determination"). In addressing issues on summary judgment, this Court must remain cognizant that we are "not called upon at this procedural stage to decide the outcome of this case; we are simply to determine whether summary judgment was appropriate." *Logue v. Flanagan,* 213 W.Va. 552, 557, 584 S.E.2d 186, 191 (2003). We find that summary judgment was not appropriate on the matter of negligent misrepresentation, and we consequently remand for further proceedings on that issue.

### C. Claim of Unjust Enrichment

The lower court correctly held that the Appellants' claim for unjust enrichment fails based upon the fact that the specific language of the lease agreement specifies that alterations to the property in question were the financial responsibility of the lessee.[12] The Appellants had knowledge that they were only lessees of the property; there was never any mistaken apprehension that they were the actual owners of the property.[13] The Appellants cannot succeed on their claim for damages for the value of the improvements under a theory of unjust enrichment.

### IV. Conclusion

Based upon the foregoing, this Court reverses the lower court's entry of summary judgment on the Appellants' claims for fraud and negligent misrepresentation. Regarding the entry of summary judgment on the unjust enrichment claim, however, we affirm the lower court. On remand, the Appellants will be permitted to continue litigation of the claims for fraud and negligent misrepresentation.

Affirmed in part, reversed in part, and remanded.

12. Paragraph nine of the agreement states, in pertinent part, that "Lessee shall, at its own expense, make all necessary repairs to the Leased Premises which may be necessary for the use and convenience of Lessee...."

13. We agree with the Appellees' contention that the debate concerning when and in what manner the Appellants attempted to exercise their option to purchase is of little consequence to the determination of whether the Appellants may maintain this action for unjust enrichment. The improvements to the property for which the Appellants seek damages occurred immediately after the execution of the lease agreement. The timing of the attempted exercise of the option to purchase is irrelevant to this claim for unjust enrichment.